CARLOS E. NEEDHAM (SBN 202777)
NEEDHAM LAW FIRM, APC
28494 Westinghouse Place, Suite 216
Valencia, CA  91355
Telephone:  (661) 843-6174
Facsimile:  (661) 430-5595
cneedham@needhamlegal.com

Attorney for Defendants
CARLOS E. NEEDHAM and
NEEDHAM LAW FIRM, A.P.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONRIDGE GLOBAL IV, LTD., a British Virgin Islands business company; IRONRIDGE GLOBAL PARTNERS, LLC, a U.S. Virgin Islands limited liability company; JOHN KIRKLAND, an individual; and BRENDAN O'NEIL, an individual,<br><br>          Plaintiffs,<br><br>SCRIPSAMERICA, INC., a Delaware Corporation; NEEDHAM LAW FIRM, A.P.C., a California corporation; CARLOS E. NEEDHAM, an individual, and DOES 1 – 10, inclusive<br><br>          vs.<br><br>          Defendants. | Case No. 2:16-CV-05335<br><br>**Hon. Dolly M. Gee**<br><br>**NEEDHAM LAW FIRM, A.P.C.'S AND CARLOS E. NEEDHAM'S NOTICE OF MOTION AND MOTION TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Defendants' Request for Judicial Notice; Declaration of Carlos Needham; and [Proposed] Order Granting Defendants' Anti-SLAPP Motion]<br><br>Hearing Date:  Friday, October 28, 2016<br>Hearing Time:  9:30 a.m.<br>Hearing Location:  Courtroom 7<br><br>**ACTION FILED: JULY 19, 2016** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTIC**E that on Friday, October 28, 2016 at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Dolly M. Gee, in Courtroom 7 of the United States District Court, Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012. Defendants NEEDHAM LAW FIRM, APC and CARLOS E. NEEDHAM will and hereby do move this Court to strike the complaint (asserting a single cause of action for malicious prosecution) filed by Plaintiffs IRONRIDGE GLOBAL IV, LTD., IRONRIDGE GLOBAL PARTNERS, LLC, JOHN KIRKLAND and BRENDAN O'NEIL (collectively, "Plaintiffs" or "Ironridge"), pursuant to California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute") on the following grounds:

(1) The Plaintiffs' complaint must be dismissed under the anti-SLAPP statute unless the Plaintiffs can establish a probability of prevailing at trial. To the extent the Plaintiffs' malicious prosecution cause of action is based on the Defendants' appeal in an underlying state court action filed by Ironridge, the Plaintiffs cannot establish a probability of prevailing at trial, given the California Supreme Court's holding in *Coleman v. Gulf Insurance Co.*, 41 Cal.3d 782, 792 (1986) (even a frivolous appeal by a defendant cannot, as a matter of law, afford a basis for a malicious prosecution action; sanctions are the exclusive remedy).

(2) To the extent the Plaintiffs' malicious prosecution cause of action is based on an underlying federal securities action filed by the Defendants, asserting that Ironridge engaged in "open market" stock manipulation in violation of federal securities laws, Ironridge cannot establish a probability of prevailing at trial. The complaint and amended complaints in the underlying securities action presented theories of recovery in a complex and unsettled area of the law. As shown on the face of the pleadings and briefs filed by the Defendants (as counsel for ScripsAmerica, Inc. ("Scrips") in the underlying action), the positions asserted

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE PLAINTIFFS'
COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

were supported by extensive legal research and analysis, as well as by an expert opinion that Ironridge had engaged in a type of "open market" manipulation. In addition, the Securities and Exchange Commission found, at least in a preliminary sense, a pattern of conduct by Ironridge resulting in diminution of stock value for many companies. At a minimum, the Defendants' arguments, as counsel for Scrips, very clearly constituted good faith arguments for modification or extension of the law.

(3) There are no allegations that, if true, could support an inference of attorney malice.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place by telephone and e-mail, beginning with a detailed discussion of the substantive merits of the case (or lack thereof) on August 5, 2016 and continuing with subsequent calls and e-mail, including an e-mail on August 15, 2016 from Defendants' counsel discussing relevant case law barring the action, at least in part. *See* Declaration of Carlos Needham, at ¶ 3. Also, defense counsel attempted to follow up on the meet and confer discussion via phone on August 30, 2016 and on September 6, 2016. *Id.* Defense counsel made an additional follow-up call to Plaintiffs' counsel on September 20, 2016. Plaintiffs' counsel has not so far indicated any willingness to withdraw or modify the complaint, and has not indicated that Plaintiffs would forego opposition to this or any other motion. *Id.*

Moreover, under the anti-SLAPP statute, Defendants are entitled to compensation for attorney's fees incurred in connection with this Motion, and they do, and will, seek such compensation via this Motion in the amount of $12,705.00.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, the Declaration of Carlos Needham, all pleadings and papers on file, and such oral argument and other evidence as the Court shall consider prior to or at the time of

1    the hearing on this Motion.

2

3

4    Dated: September 23, 2016         By:  /s/ Carlos E. Needham
                                       CARLOS E. NEEDHAM,
5                                      *Attorney for Defendants*
                                       NEEDHAM LAW FIRM, A.P.C. and
6                                      CARLOS E. NEEDHAM
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE PLAINTIFFS'
COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................1

II. PLAINTIFFS' ALLEGATIONS AND THE JUDICIALLY
NOTICEABLE FACTS ........................................................................2

  A.    The underlying state court appeal.................................................2
  B.    The underlying federal securities fraud action ...........................4

III.    LEGAL STANDARDS.........................................................................8

IV.    ARGUMENT AND AUTHORITIES ...................................................9

  A.    The Plaintiffs' malicious prosecution is, at least in part, barred as a matter
of law under the California Supreme Court's holding in Coleman v Gulf
Insurance Co. ...............................................................................9

  B.    As to the underlying federal case, the Plaintiffs cannot show a probability
of prevailing on their malicious prosecution claim ...................10

      1.    Malicious prosecution claims are disfavored because of the great
risk of a chilling effect on litigants and on a lawyer's zeal and
creativity..............................................................................10

      2.    The Plaintiffs cannot establish a probability of prevailing on the
"lack of probable cause" element of their malicious prosecution
claim, which would require them to prove that Scrips' suite was
"frivolous" and "totally and completely without merit". Even if
Scrips' underlying open market manipulation claim were deemed
"extremely unlikely" to prevail, that is not enough to establish a lack
of probable cause ................................................................12

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE PLAINTIFFS'
COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

3.	A suit cannot give rise to a proper malicious prosecution claim if it is based on a good faith argument for the modification or extension of the law .......................................................................................... 13

4.	The Defendants' arguments in the federal securities case were, at minimum, classic arguments for extension or modification of the law .................................................................................................... 14

5.	There are no allegations, that, if true, could support an inference of attorney malice ................................................................................. 17

**V.	CONCLUSION** ............................................................................... **17**

**TABLE OF AUTHORITIES**
**Cases**

*Arcaro v. Silva & Silva Enterprises Corp,* 77 Cal.App.4th 152, 156 (1999) ............................................................................................... 14

*Caro v. Smith,* 59 Cal.App.4th 725, 739 (1997) ................................... 10

*Coleman v. Gulf Insurance Co.,* 41 Cal.3d 782, 792 (1986) ............ 1, 9

*Desai v. Deutsche Bank Securities Ltd.,* 573 F.3d 931, 945 (9th Cir. 2009) .................................................................................................... 7

*Jarrow Formulas, Inc. v. Lamarche,* 31 Cal.4th 728, 733 (2003) ................ 8, 9, 13

*Kracht v. Perrin, Gartland & Doyle,* 219 Cal.App.3d 1019, 1028 (1990) .................................................................................................. 11

*Makaeff v. Trump University,* Llc, 736 F.3d 1180, 1187 (2013) ........................... 9

*Markowski v. S.E.C.,* 274 F.3d 525, 527-28 (D.C.Cir. 2001) ............................ 15

*Mccoy v. Court Of Appeals Of Wisconsin,* 486 U.S. 429, 444 (1988) ................. 14

*Morrison v. Rudolph,* 103 Cal.App.4th 506, 512 (2002) ....................... 14

*Paiva v. Nichols,* 168 Cal.App.4th 1007, 1018 (2008) .................... 13, 14

*Plumley v. Mockett,* 164 Cal.App.4th 1031, 1047 (2008) ..................... 13

*S.E.C. v. Ficeto,* 839 F.Supp.2d 1101, 1104 (C.D.Cal. 2011) ............................ 15

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE PLAINTIFFS'
COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

*S.E.C. v. Masri*, 523 F.Supp.2d 361, 367-72 (S.D.N.Y. 2007) .............................. 15

*Sangster v. Paetku,* 68 Cal.App.4th 151, 165 (1998)*; Leonardini V.* .................... 9

*Shell Oil Co.,* 216 Cal.App.3d 547, 571 (1989). ...................................................... 9

*Sheldon Appel Co. v. Albert Oliker*, 47 Cal.3d 863, 875 (1989).....9, 10, 11, 12, 13

*Umansky v. Urquhart,* 84 Cal.App.3d 368, 372 (1978) ........................................ 11

*Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811, 822 (2002) ..................... 13

*Zamos v. Stroud,* 32 Cal.4th 958, 966 (2004)...........................................11, 12, 13

## STATUTES

California Code of Civil Procedure § 425.16 ........................................................... 1

## OTHER AUTHORITIES

Freedman & Smith, Understanding Lawyer's Ethics (2d ed. 2002) §
     4.07, p. 93 ....................................................................................................... 11

Hazard *et al*., The Law of Lawyering (3d ed. 2010) § 27.12, at 27-26................. 11

Initial Public Offering Securities Litigation, 241 F.SUPP.2D 281, 391
     (S.D.N.Y. 2003)............................................................................................... 16

Korsmo, Mismatch: The Misuse Of Market Efficiency In Market
     Manipulation Class Actions, 52 William And Mary L.R. 1111
     (2011)................................................................................................................. 7

Model Rules of Professional Conduct, Rule 3.1 .................................................... 14

Multer, Open-Market Manipulation Under Sec Rule 10b-5 And
     Analogues:  Inappropriate Distinctions, Judicial Disagreement And
     Case Study:  Ferc's Anti-Manipulation Rule, Securities Regulation
     Journal, 97-139 (2011) .................................................................................... 15

Rest.3d Law Governing Lawyers, § 110, subd. (1), at 171 .................................. 14

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE PLAINTIFFS'
COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

# I.   INTRODUCTION

The Plaintiffs (collectively, "Ironridge") assert a cause of action for malicious prosecution.  Their complaint (the "Complaint") is based on two underlying proceedings.

The first underlying proceeding was an appeal that the Defendants filed in a California state court action, in which Ironridge was the plaintiff and ScripsAmerica, Inc. ("Scrips") was the defendant.  On appeal, the Defendants, on behalf of Scrips, sought to have a trial court enforcement order in favor of Ironridge set aside.

The second underlying proceeding was a federal court action against Ironridge filed by the Defendants on behalf of Scrips, asserting that Ironridge engaged in "open market" manipulation of Scrips' stock in violation of federal securities laws.

Under California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute), as construed and applied by state and federal courts, a malicious prosecution action must be stricken as a "strategic lawsuit against public participation," unless the plaintiff cannot establish a probability of prevailing at trial.

The Plaintiffs in this case cannot establish a probability of prevailing at trial, for the following reasons:

(1) as to the underlying state court action, it is clear under California law that a defendant's appeal cannot give rise to a malicious prosecution action.  *See Coleman v. Gulf Insurance Co.*, 41 Cal.3d 782, 792 (1986) (even a frivolous appeal by a defendant cannot, as a matter of law, afford a basis for a malicious prosecution action; sanctions are the exclusive remedy).  Moreover, there never was any ruling by the California Court of Appeal on the merits of the arguments raised in the

appeal.

(2) as to the underlying federal securities case, Ironridge cannot establish a probability of prevailing at trial. The complaint and amended complaints in the underlying securities action presented theories of recovery in a complex, evolving, unsettled area of the law. As shown on the face of the pleadings and briefs filed by the Defendants (as counsel Scrips in the underlying action), the positions asserted were supported by extensive legal research and analysis, as well as by an expert opinion that Ironridge had engaged in a type of "open market" manipulation. In addition, the SEC had, at least in a preliminary sense, found a pattern of conduct by Ironridge resulting in diminution of stock value for many companies. At a minimum, the Defendants' arguments, as Scrips' counsel, constituted good faith arguments for an extension of the law.

(3) there are no allegations that, if true, could support an inference of attorney malice.

## II.   PLAINTIFFS' ALLEGATIONS AND THE JUDICIALLY NOTICEABLE FACTS

### A.   The underlying state court appeal.

In the underlying state court action, Ironridge was the plaintiff. (Ironridge's Complaint in this action (the "Complaint"), at ¶ 12.)    Scrips was the defendant. (*Id.*)  Ironridge had purchased some of Scrips' debt and sought to collect.  (*Id.*)  (A copy of Ironridge's complaint in the underlying state court action is attached as Exhibit B to the Declaration of Carlos Needham (the "Needham Dec.".)

The parties entered into a settlement under which Scrips was to issue shares to Ironridge in return for debt forgiveness. (Complaint, at ¶ 13.)  The settlement

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

had a provision for an increase in the number of shares to be issued in the event of a decline in stock price.  (*Id.*)  (A copy of the settlement is attached as part of Exhibit C to the Needham Dec.)

Scrips made various issuances of stock to Ironridge under the settlement, totaling over 10 million shares.  (Complaint, at ¶¶ 13-14.)

In April of 2016, however, Scrips refused to continue to issue shares to Ironridge.  (*Id.,* at ¶ 15.)  In response, Ironridge sought, and obtained, an *ex parte* order from the state trial court enforcing the settlement under California Code of Civil Procedure § 664.6.  (*Id.*, at ¶ 16.)   The order required Scrips to issue additional shares to Ironridge.  (*Id.*)  It also prohibited Scrips from issuing shares to third parties.  (*Id.*)  (A copy of the order is attached as Exhibit C to the Needham Dec.)

In opposing Ironridge's request for issuance of the enforcement order, Scrips asserted, *inter alia*, that Ironridge was trading with Scrips' shares in an illegal manner designed to manipulate downward the price of Scrips' stock, so as to yield artificially high levels of share issuance under the settlement.  (A copy of Scrips' opposition to Ironridge's *ex parte* application is attached as Exhibit D to the Needham Dec.)

On appeal, Scrips asserted, *inter alia*, that the part of the trial court's enforcement order prohibiting issuance of shares to third parties was beyond the jurisdictional authority of the Court under § 664.6, because the settlement contained no such prohibition.  Under § 664.6, a trial court has no authority to add restrictive terms to a settlement.  As such, Scrips was entitled to disobey the prohibition.  (A copy of Scrips' briefing in the appeal is attached as Exhibit E to the Needham Dec.; *see* pp. 5-6 of the opening brief and pp. 9-10 of the reply brief.)

Ultimately, the California Court of Appeal dismissed Scrips' appeal under the "disentitlement" doctrine, which permits the dismissal of an appeal where the

1  appellant has disobeyed a trial court order that, while putatively erroneous, was

2  within the court's authority.  The Court of Appeal made no effort to explain how the

3  prohibition of sales to third parties was within the trial court's authority.  The Court

4  of Appeal also completely ignored the distinction between a trial court order that is

5  beyond the court's authority (which a litigant may rightfully disobey), and one that

6  is merely alleged to be the product of trial court error.  (A copy of the Court of

7  Appeal's ruling is attached as Exhibit F to the Needham Dec.; the ruling can also be

8  found at 238 Cal.App.4th (2015).)

9        In any event, the relevant point for this malicious prosecution action is that

10  there is no allegation that Scrips was anything but a defendant seeking on appeal to

11  reverse an affirmative award of relief obtained by Ironridge, as a plaintiff in the

12  underlying state action.  And there is nothing in the record that would support such

13  an allegation.  As explained above and below, that scenario, as a matter of law,

14  cannot give rise to a malicious prosecution claim.

15

16        **B.      The underlying federal securities fraud action**

17

18        Attached as exhibits to the Needham Dec. are the original and amended

19  complaints in the underlying securities fraud action filed by Scrips, as well as the

20  court's rulings with respect to each of those complaints, and the oppositions (to

21  motions to dismiss) filed by Scrips, which set forth Scrips' legal arguments in

22  defense of the theory of liability it asserted.

23        A review of those documents will unequivocally reveal that Scrips' counsel

24  merely performed his function as a zealous and creative advocate to advance

25  positions and arguments that were, at worst, good faith arguments for modification

26  or extension of the law in a complex and unsettled area of federal securities law.

27        Scrips' original complaint advanced the theory that Ironridge engaged in

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF
POINTS AND AUTHORITIES

wrongful manipulation of its stock price in violation of federal securities law.  (A copy of Scrips' original Complaint is attached as Exhibit G to the Needham Dec.; *see* ¶¶ 18-21.)   As explained at length in Scrips' opposition to the motion to dismiss the original Complaint (a copy of which is attached as Exhibit H to the Needham Dec.), the theory of liability that Scrips was asserting was not the traditional theory of securities fraud involving a specific misrepresentation that induced the plaintiff to buy or sell stock.  (*See* the opposition, at 12-18.)  Instead, Scrips was asserting a theory of liability known as "open market manipulation."  (*Id.*)  Scrips noted that the theory had been applied by another trial court in the Central District and by federal courts in other circuits.  (*Id.*)  Scrips explained how the traditional elements of fraud, requiring a specific showing of scienter and reliance, do not apply—or at least do not apply in the same way—in a market manipulation case.  (*Id.*)  Scrips also cited authority for a relaxed pleading standard to be applied in a market manipulation case.  (*Id.*, at 13 n.1)   Scrips also indicated that, at trial, it would present expert analysis of Ironridge's trading activity that would show a manipulative technique known as "bid-whacking."  (*Id.*, at 17 n.2.)

In explaining its decision to dismiss the original Complaint (with leave to amend), the court did not definitively reject the theory of open market manipulation or the relaxed pleading standard applicable to that theory.  (A copy of the Court's opinion is attached as Exhibit I to the Needham Decl.)

Nevertheless, despite the relaxed pleading standard, and despite the fact that Scrips had identified (at least in its opposition) the specific manipulative technique at play, and despite the mismatch between the traditional fraud analysis and the theory of open market manipulation, the court found the original Complaint wanting with respect to traditional fraud elements of particularity, reliance and scienter.

Scrips tried to remedy these purported shortcomings in an amended

complaint.  (A copy of Scrips' First Amended Complaint (the "FAC") is attached as Exhibit J to the Needham Dec.)  Scrips, in the amended complaint itself, asserted the specific manipulative technique known as "bid-whacking," as well as other techniques, such as "marking the close."  (FAC, at 10-22.)

The amended complaint sought to make it even more abundantly clear that the theory of liability was open market manipulation, which is a species of "fraud on the market."  As explained in Scrips' opposition to the motion to dismiss the FAC (a copy of which is attached as Exhibit K to the Needham Dec.), in a fraud on the market scenario, reliance can be presumed.  (*See* the opposition, at 9.)

Also, the amended complaint added allegations regarding a pattern of manipulative conduct with respect to the stock of least 32 other companies (FAC, at 10-22).  As Scrips explained in its opposition, this pattern, along with the use of the specific manipulative techniques identified in the FAC, give rise to a strong inference of scienter.  (See the opposition, at 14-16.)

In explaining its decision to dismiss the FAC (with leave to amend), the court, again despite the relaxed pleading standard, stated that Scrips still had not alleged the manipulative conduct with enough particularity because there were no allegations as to "size, timing, or repetition of Ironridge's trades in the first amended complaint."  (A copy of the Court's opinion is attached as Exhibit L to the Needham Decl.)

The Court also stated that Scrips had not made specific allegations regarding the factors that inform an analysis of whether or not the market for a particular stock is an efficient one (the so-called "*Cammer* factors," referring to a leading case on the subject).   As the court explained, the fraud on the market theory of liability only applies where the market is "efficient."

Scrips believed (and still believes) that it is not proper for a trial court, *at the pleading stage*, to require a party to present its expert opinion and underlying data.

That should come at a later stage in the litigation.  Nevertheless, in its Second Amended Complaint (the "SAC"), Scrips provided its expert's opinion and the voluminous and comprehensive trading data, organized in various ways, that the expert relied on to reach his opinion that Ironridge had engaged in manipulative conduct.   (A copy of the SAC is attached as Exhibit M to the Needham Dec.; *see* ¶¶ 22-23.)  These data showed the size, timing, and repetition of Ironridge's trades at the most granular level possible.

Moreover, as explained in Scrips' opposition to the motion to dismiss the SAC (attached as Exhibit N to the Needham Dec.), the *Cammer* efficiency factors have no logical relevance (and actually could produce a perverse result) in the case of open market manipulation of the stock price of a "small cap" company like Scrips.  (*See* the opposition, at 6-8, *citing Korsmo, Mismatch: The Misuse of Market Efficiency in Market Manipulation Class Actions*, 52 William and Mary L.R. 1111 (2011) and *Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931, 945 (9th Cir. 2009) (airing the question whether a plaintiff must show the same type of proof of an efficient market in a market manipulation case).  Nevertheless, Scrips made extensive allegations addressed to the *Cammer* factors in the SAC.  (SAC, at ¶¶ 29-32; *see also* the opposition, at 8-13.)

Scrips also pointed out that the "efficiency" question is a fact question that cannot properly be resolved via a motion to dismiss.  (*See* the opposition, at 12-13.)

The court dismissed the SAC, without leave to amend.  (The court's opinion is attached as Exhibit O to the Needham Dec.)  The court noted that "there is some authority" for Scrips' argument that the "efficiency" issue cannot be resolved at the motion to dismiss stage.  (Opinion, at 49 n.129).  Nevertheless, based on its interpretation of other authorities, the court concluded that it was appropriate to make a bench finding, at the pleading stage, regarding the *Cammer* facts.  (*Id.*)  The court's factual finding was that, while not all of the facts militated against a finding

of efficiency, on balance the facts justified a finding that the market for Scrips stock was not efficient.  (*Id.*, at 49-56.)

The court did not address the argument that the efficiency analysis is not logically relevant in the case of open market manipulation of the stock price of a small cap company like Scrips.

As to the  of Ironridge's trading data showed manipulative conduct, and the supplying of all such data at a granular level, the court held that that was still not sufficiently particular because there was no identification of specific manipulative trades.  (Opinion, at 30, 67.)

Though the case was only at the pleading stage, the court elected to disregard all of Scrips' allegations regarding a pattern of manipulative conduct, on evidentiary grounds.  (Opinion, at 61-66.)  The court even refused to consider an SEC finding that Ironridge had engaged in a pattern of at least 33 transactions, just like the Scrips transaction, where Ironridge "typically drove down the share price and increased the number of shares…received under the applicable price protection formulas."  (*See* the opposition (Ex. N to the Needham Dec.), at 3, and Exhibit A to the Declaration of Carlos Needham that was part of the opposition package (included as part of Exhibit N.)

### III.   LEGAL STANDARDS

Under California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute"), a lawsuit that is based on a defendant's participation in an official proceeding must be dismissed unless the plaintiff can establish a probability of prevailing at trial.  *See Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003).

The anti-SLAPP statute applies to malicious prosecution lawsuits.  *See*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

*Jarrow, supra,* at 734.  Also, California's anti-SLAPP statute applies in federal court.  *See Makaeff v. Trump University*, LLC, 736 F.3d 1180, 1187 (2013).

As to the Plaintiffs' theory of recovery based on the underlying state court appeal, that theory fails as a matter of law under a controlling California Supreme Court decision establishing that a defendant's appeal (even if frivolous) does not give rise to a proper malicious prosecution action.  *See Coleman, supra,* 41 Cal.3d at 792.  The exclusive remedy is an award of sanctions.  *Id.*

As to the underlying federal court securities action, evaluation of whether or not the Plaintiffs can establish a probability of prevailing turns on the question of whether or not they can establish that the Defendants' filings in the underlying securities action lacked probable cause.  The existence or absence of probable cause is a question of law to be determined by the Court.  *Sheldon Appel Co. v. Albert Oliker*, 47 Cal.3d 863, 875 (1989).

Moreover, in this malicious prosecution suit against an attorney, the Court must view the allegations in the underlying action most favorably to the attorney. *Sangster v. Paetku,* 68 Cal.App.4th 151, 165 (1998)*; Leonardini v. Shell Oil Co.,* 216 Cal.App.3d 547, 571 (1989).

# IV. ARGUMENT AND AUTHORITIES

A.   **The Plaintiffs' malicious prosecution is, at least in part, barred as a matter of law under the California Supreme Court's holding in *Coleman v. Gulf Insurance Co.***

Under California law, a defendant's appeal cannot give rise to a malicious prosecution action.  *See Coleman, supra,* 41 Cal.3d at 792 (even a frivolous appeal

by a defendant cannot, as a matter of law, afford a basis for a malicious prosecution action; sanctions are the exclusive remedy).

The Plaintiffs' complaint is based, in part, on the Defendants' filing of an appeal, on behalf of Scrips, purely as a defendant in the underlying state case. Under *Coleman*, that theory of recovery is barred as a matter of law.

**B.    As to the underlying federal case, the Plaintiffs cannot show a probability of prevailing on their malicious prosecution claim.**

**1.    Malicious prosecution claims are disfavored because of the great risk of a chilling effect on litigants and on a lawyer's zeal and creativity.**

"[C]ourts have long recognized that the [malicious prosecution] tort has the potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to … bring a civil dispute to court …." *Sheldon Appel, supra*, 47 Cal.3d at 872. "[I]t is … important 'that an individual be free to protect personal rights by resort to the courts without the threat of a countersuit for damages in the event the suit is unsuccessful' [citation], and courts have generally been sensitive to the need to carefully limit tort liability in the context of malicious prosecution of a civil proceeding … ." *Id.* at 872, fn. 5.

Moreover, the adversary system is premised on the notion that an advocate may zealously protect his or her client's interests.  "Lawyers in an adversarial system are free to inflict hard blows on their opponents as part of their responsibility to zealously guard the interests of their clients …." *Caro v. Smith,* 59 Cal.App.4th 725, 739 (1997)*.*  As one authority has observed, "[o]ne of the most serious threats to zealous advocacy is the imposition of sanctions against lawyers

who file pleadings or make arguments that are deemed to be 'frivolous.' "
Freedman & Smith, *Understanding Lawyer's Ethics* (2d ed. 2002) § 4.07, p. 93.
Attorneys fearful of a retaliatory lawsuit "might temper the zealousness of their
advocacy to avoid increasing the incentive for the adversary to pursue" such a suit.
*Kracht v. Perrin, Gartland & Doyle*, *219* Cal.App.3d 1019, 1028 (1990).

Moreover, "overuse of the charge of frivolousness would chill not only the
zeal but the creativity of lawyers who operate on the leading edge of legal
development.  Even 'settled' legal questions must be open to challenge at some
point, or else the law would stultify."  2 Hazard *et al*., The Law of Lawyering (3d
ed. 2010) § 27.12, at 27-26.

"The law … is not immutable. It remains in flux to allow for constructive
change through the efforts of diligent and conscientious lawyers. It is through legal
imagination and ingenuity in pleading that evolution of the law occurs. Whether we
examine the law of torts and the development of strict liability for product defect
[citation] or family law and the division of retirement benefits as community
property [citation], we note the effect of the dynamics of the legal process. Statutes
which withstand constitutional challenge in one year may be declared
unconstitutional in later years." *Umansky v. Urquhart,* 84 Cal.App.3d 368, 372
(1978).

Because of these potential chilling effects, the tort of malicious prosecution
"has traditionally been regarded as a disfavored cause of action." (*Sheldon Appel,
supra,* 47 Cal.3d at 872; *accord Zamos v. Stroud,* 32 Cal.4th 958, 966 (2004).
Accordingly, "the elements of the tort historically have been **carefully
circumscribed** so that litigants with potentially valid claims will not be deterred
from bringing their claims to court by the prospect of a subsequent malicious
prosecution claim." *Sheldon Appel, supra,* 47 Cal.3d at p. 872 (emphasis added.)

1
2
3
4
5
6
7
8
9

**2.      The Plaintiffs cannot establish a probability of prevailing on the "lack of probable cause" element of their malicious prosecution claim, which would require them to prove that Scrips' suit was "frivolous" and "totally and completely without merit."  Even if Scrips' underlying open market manipulation claim were deemed "extremely unlikely" to prevail, that is not enough to establish a lack of probable cause.**

10     One of the "carefully circumscribed" elements a malicious prosecution
11  plaintiff must prove is that the defendant lacked probable cause to bring the
12  underlying claim.   *Sheldon Appel*, *supra*, 47 Cal.3d at 871.
13     In *Sheldon Appel, supra, 47 Cal.3d at 885–886,* the California Supreme
14  Court analogized the "lack of probable cause" element in a malicious prosecution
15  action to a frivolous appeal.  The court held that, for purposes of a malicious
16  prosecution, the claim does not lack probable cause unless 'any reasonable attorney
17  would agree that the [claim] is *totally and completely* without merit.' " Id. *at 885*
18  (italics added); *accord Zamos, supra,* 32 Cal.4th at 970.
19     A claim need not be meritorious, or even likely to be so, to defeat a claim
20  that it lacked probable cause.  " 'Probable cause may be present even where a suit
21  lacks merit.  Favorable termination of the suit often establishes lack of merit, yet
22  the plaintiff in a malicious prosecution action must separately show lack of
23  probable cause.  Reasonable lawyers can differ, some seeing as meritless suits
24  which others believe have merit, and some seeing as totally and completely without
25  merit suits which others see as only marginally meritless.  Suits which all
26  reasonable lawyers agree totally lack merit—that is, those which lack probable
27  cause—are the least meritorious of all meritless suits. Only this subgroup of

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

meritless suits present[s] no probable cause.' [Citation.]"  *Jarrow, supra,* 31 Cal.4th 728, 743, fn. 13.

This is because "it is not 'true charges' but rather legally tenable claims for relief that the law seeks to protect. [Citations.]"  *Sheldon Appel, supra,* 47 Cal.3d at 885.   " 'Counsel and their clients have a right to present issues that are arguably correct, ***even if it is extremely unlikely that they will win*** . …' [Citation.]"  *Id.* (emphasis added).   Plaintiffs and their attorneys "have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious."  *Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811, 822 (2002)*; accord, Zamos, supra,* 32 Cal.4th at 970, fn. 9.

Accordingly, a civil litigant is held to a "relatively low standard of probable cause … . [Citation.]" *Wilson, supra, at* 823 fn. 8*, citing Sheldon Appel, supra,* 47 Cal.3d at 885; *see also Paiva v. Nichols,* 168 Cal.App.4th 1007, 1018 (2008) ("'less stringent' standard"); *see also Plumley v. Mockett,* 164 Cal.App.4th 1031, 1047 (2008) ("low threshold" and "lenient standard").

### 3.   A suit cannot give rise to a proper malicious prosecution claim if it is based on a good faith argument for the modification or extension of the law.

In evaluating the probable cause element of a malicious prosecution claim , a "court must properly take into account the evolutionary potential of legal principles. [Citation.]"  *Sheldon Appel, supra,* 47 Cal.3d at 886; *accord Paiva*, *supra,* 168 Cal.App.4th at 1019.  As the court stated in *Paiva,* " '[c]onsideration of this question [of probable cause] requires that the court take account of the evolutionary potential of legal principles and any uncertainty which might be embedded there. [Citation.]  "To hold that the person initiating civil proceedings is liable unless the

claim proves to be valid, would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority has been modified or rejected. To subject those who challenge this authority to liability for wrongful use of civil proceedings might prove a deterrent to the overturning of archaic decisions." [Citations.]' [Citation.]"   *Paiva, supra,* 168 Cal.App.4th, at 1019.

These principles make clear that a claim does not lack probable cause merely because there is no existing authority that indisputably establishes its legal viability. Indeed, a claim is not necessarily lacking in probable cause even if the existing authority is directly adverse, provided there is some basis to argue for an extension, modification, or reversal of existing law.   *See, e.g.,* Rest.3d Law Governing Lawyers, § 110, subd. (1), at 171; Model Rules of Professional Conduct, Rule 3.1.

As the United States Supreme Court stated, "[i]n searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client." *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 444 (1988).

An action does not lack probable cause " 'if it is supported by existing authority or the reasonable extension of that authority.'" *Morrison v. Rudolph,* 103 Cal.App.4th 506, 512 (2002), *quoting Arcaro v. Silva & Silva Enterprises Corp,* 77 Cal.App.4th 152, 156 (1999).

### 4.   The Defendants' arguments in the federal securities case were, at a minimum, classic arguments for extension or modification of the law.

The traditional federal securities fraud claim is based on an assertion that the

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

defendant made some specific, material misrepresentation that the defendant relied on in buying or selling a security (like a stock).  That was not the basis of Scrips' suit.  Instead, Scrips asserted a theory of recovery that legal scholars and courts have called the theory of "open market manipulation."   This theory is a species of the broader and well-recognized concept of "fraud on the market."  Under that concept, a defendant can be liable for securities fraud even though he made no specific misrepresentation directly to the plaintiff, if the defendant engaged in wrongful activity that was designed to deceive the market as a whole.   An authoritative, scholarly discussion of the open market manipulation concept is contained in Multer, *Open-Market Manipulation under SEC Rule 10b-5 and Analogues:  Inappropriate Distinctions, Judicial Disagreement and Case Study: FERC's Anti-Manipulation Rule*, <u>Securities Regulation Journal</u>, 97-139 (2011) ("Multer") and the many federal court cases cited therein.  (Multer was cited by Scrips in its opposition to the motion to dismiss the FAC (Ex. K to the Needham Dec.), at 8.)

As explained by Multer and the cases cited therein, the theory of open market manipulation comes into play where the defendant made no *individual* trade that was, by itself, improper, but where the overall pattern of legal trading reveals a wrongful intent to artificially control share price.

Open market manipulation is, admittedly, not yet a universally accepted theory of recovery.  Some courts have formed the opinion that a defendant cannot be liable if the defendant engaged in no individual act that is illegal, regardless of whether or not there might have been an attempt to manipulate the market.  Other scholars and courts have disagreed*.  See, e.g., S.E.C. v. Ficeto*, 839 F.Supp.2d 1101, 1104 (C.D.Cal. 2011) (J. King); *S.E.C. v. Masri*, 523 F.Supp.2d 361, 367-72 (S.D.N.Y. 2007)**;** *see also Markowski v. S.E.C.*, 274 F.3d 525, 527-28 (D.C.Cir. 2001) (holding that it "appears to be Congress's determination that 'manipulation'

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

can be illegal solely because of the actor's purpose"); *In re Initial Public Offering Securities Litigation,* 241 F.Supp.2d 281, 391 (S.D.N.Y. 2003) (finding that no authority in case law or academic literature supports any additional requirement in "so-called open-market" cases and observing that the kinds of additional requirements contemplated are really just the types of circumstantial factors that lead to an inference of intent, making the distinction "illusory").

Unlike the D.C. Circuit, the Ninth Circuit has not yet ruled one way or the other on the "open market manipulation" theory.

And, perhaps more importantly, the way in which to apply—or not apply— the traditional elements of fraud in an open market manipulation case is not entirely clear even where it is applied. In short, the applicability and the precise contours of the theory of open market manipulation are very much in flux among the courts.

The court's final, dispositive insistence that Scrips allege specific trades that were manipulative is antithetical to the open market manipulation theory. Implicitly, therefore, the court simply declined ultimately to adopt the open market theory, at least as that theory has been described in case law and literature. That was perhaps the court's prerogative, given the unsettled nature of the law.

But it was also Scrips' prerogative, ***and its counsel's duty***, to argue for application of the theory, which is supported by both case law and sound scholarship.

And it was also Scrips' prerogative, and its counsel's duty, in a market manipulation case, to argue for departures from the normal rules applicable to traditional securities fraud cases. These included (1) a relaxed standard of pleading, (2) dispensing with the efficiency requirement or at least declining to make a bench finding at the pleading stage on that issue; (3) and allowing, at the pleading stage, an inference of scienter based on the alleged manipulative conduct itself and a pattern of conduct resulting in share price decline for many companies (as found by

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

1   the SEC).  As discussed above, and extensively in Scrips' filings in the underlying

2   action, all of these arguments are supported by case precedent and scholarship, as

3   well as by logic.

4        Either explicitly or implicitly, the court rejected these arguments.  But not by

5   any stretch can the arguments be characterized as frivolous arguments or, at a

6   minimum, as anything but good faith arguments for extension or modification of

7   the law.

8

9              **5.    There are no allegations that, if true, could support an**

10                     **inference of attorney malice.**

11

12       The question of an attorney's malice is normally a question of fact.  But there

13  must at least be factual allegations that, if true, could support an inference of

14  malice.  In this case there are no such allegations.

15

16                  **V.    CONCLUSION**

17

18       The Court should strike the Plaintiffs' complaint and award Defendants

19  attorney's fees, in the amount of $12,705.00.  (*See* Needham Dec., at ¶ 18.)

20

21

22

23

24

25

26

27

---

17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF
POINTS AND AUTHORITIES

1

2

3

4

5

Dated:  September 23, 2016

6

7

8

9

10

By:  /s/Carlos E. Needham
Carlos E. Needham
*Attorney for Defendants*
NEEDHAM LAW FIRM, A.P.C. and
CARLOS E. NEEDHAM

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF
POINTS AND AUTHORITIES