**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (SBN 180442)
Matthew J. Negrin, Esq. (SBN 227429)
Sonya Ostovar, Esq. (SBN 307207)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1740
Phone: (310) 312-0299; Fax: (310) 312-0296
Email: makarem@law-rm.com; negrin@law-rm.com

Attorneys for Plaintiffs
IRONRIDGE GLOBAL IV, LTD.,
IRONRIDGE GLOBAL PARTNERS, LLC,
JOHN KIRKLAND, and BRENDAN O'NEIL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONRIDGE GLOBAL IV, LTD., a British Virgin Islands business company; IRONRIDGE GLOBAL PARTNERS, LLC, a U.S. Virgin Islands limited liability company; JOHN KIRKLAND, an individual; and BRENDAN O'NEIL, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> SCRIPSAMERICA, INC., a Delaware corporation; NEEDHAM LAW FIRM, A.P.C., a California corporation; CARLOS E. NEEDHAM, and individual, and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. 2:16-CV-05335 <br> [Assigned to Hon. Dolly M. Gee] <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS NEEDHAM LAW FIRM, A.P.C. AND CARLOS E. NEEDHAM'S MOTION TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE** <br><br> [Filed concurrently with Plaintiff's Request for Judicial Notice; Declaration of Brendan O'Neil; Declaration of John Kirkland; Declaration of Robert Schneiderman; Declaration of Matthew Negrin; and [Proposed] Order Denying Defendants' Anti-SLAPP Motion] <br><br> <u>Hearing Date</u>: October 28, 2016 <br> <u>Hearing Time</u>: 9:30 a.m. <br> <u>Hearing Location</u>: Courtroom 7 <br><br> <u>Complaint Filed</u>: July 19, 2016 |

///

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Plaintiffs Ironridge Global IV, Ltd., Ironridge Global Partners, LLC, John Kirkland and Brendan O'Neil (collectively, "Plaintiffs"), hereby opposes Defendants Needham Law Firm, A.P.C. and Carlos E. Needham's (collectively, "Defendants") special motion to strike pursuant to California Code of Civil Procedure § 425.16 (California's "anti-SLAPP" statute).

This Opposition is based upon Plaintiffs' demonstration of the probability of prevailing on the merits with regard to malicious prosecution. Plaintiffs meet the minimum evidentiary standards required under Code of Civil Procedure 425.16 in showing a probability of success on the merits. Plaintiffs can show favorable termination of the underlying securities action, that Defendants had no probable cause to bring the action, and that Defendants brought the action with malice.

Moreover, Plaintiffs' are entitled to compensation for the attorney's fees incurred in connection with this Opposition, pursuant to Code of Civil Procedure section 425.16(c)(1) and section 128.5(a). Accordingly, Plaintiffs' seek compensation in the amount of $19,642.50.

This Opposition is based upon the complete files and records in this action, the following Memorandum of Points and Authorities, Plaintiffs' Requests for Judicial Notice, Declaration of Brendan O'Neil, Declaration of John Kirkland, Declaration of Robert Schneiderman, Declaration of Matthew Negrin and any documentary and/or oral evidence as may be presented at the time of the hearing of the Motion.

Dated: October 7, 2016                    **MAKAREM & ASSOCIATES,** APLC


By:   /s/ Matthew Negrin /s/
      MATTHEW NEGRIN
      Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................... 1

II.  STATEMENT OF FACT........................................ 2

     A. The Underlying State Court Appeal ................................ 2

     B. The Underlying Federal Securities Action ........................ 3

     C. SA's CEO Admits That Ironridge Never

        Engaged in Improper or Manipulative Conduct

        with Respect to Its Stock.................................................. 6

III. ANTI-SLAPP MOTIONS IN FEDERAL COURT….....…… 8

IV.  STANDARD OF REVIEW FOR ANTI-SLAPP

     MOTIONS.................................................................... 9

V.   PLAINTIFFS CAN SHOW A PROBABILITY OF

     SUCCESS ON THE COMPLAINT FOR MALICIOUS

     PROSECUTION AND, THEREFORE, DEFENDANTS

     FAIL TO SATISFY THE SECOND STEP OF THE

     ANTI-SLAPP TEST……………………………………… 10

     A. Plaintiffs Malicious Prosecution Action Is Not

        Based On The Underlying State Court Appeal………. ….. 10

     B. Plaintiffs Need Only Meet A Minimal Evidentiary

        Burden To Show A Probability Of Success……………… 10

     C. Plaintiffs Can Show Probability Of Success On

        The Malicious Prosecution Claim………………….…… 12

            i.  *Element 1*: The underlying federal securities

                action was commenced by or at the direction

                of the defendants and was pursued to a legal

                termination in plaintiffs' favor…………………… 13

            ii. *Element 2*: The underlying federal securities

                action was brought and continued without

PLAINTIFFS' OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

probable cause……………………………………… 13

iii. *Element 3*: The underlying federal securities

action was initiated with malice………………….. 17

VI.      PLAINTFFS ARE ENTITLED TO SANCTIONS ................ 20

VII.     CONCLUSION ........................................................ 20

# **TABLE OF AUTHORITIES**

## **CASES**

*Bertero v. National General Corp.*

(1974) 13 Cal.3d 43................................................................. 12,13

*Cole v. Patricia A. Meyer & Associates, APC*

(2012) 206 Cal.App.4th 1095................................................... 18

*Colt v. Freedom Communications, Inc.*

(2003) 109 Cal.App.4th 1551,1557........................................... 11

*Crowley v. Katleman*

(1994) 8 Cal.4th 666................................................................ 14

*Daniels v. Robbins*

(2010) 182 Cal.App.4th 204..................................................... 9,11,13,18

*Drummond v. Desmarais*

(2009) 176 Cal.App.4th 439..................................................... 17

*Equilon Enterprises v. Consumer Cause, Inc.*

(2002) 29 Cal.4th 53................................................................ 9

*Financial Corp. of America v. Wilburn*

(1987) 189 Cal.App.3d 764....................................................... 12

*Francis v. Wynn Las Vegas*

557 F. App'x 662, 665 (9th Cir. 2014) ....................................... 18

*Grewal v. Jammu*

(2011) 191 Cal.App.4th 977....................................................... 11

*HMS Capital, Inc. v. Lawyers Title Company*

(2004) 118 Cal.App.4th 204..................................................... 10-12,18

*Jarrow Formulas, Inc. v. LaMarche*

(2003) 31 Cal.4th 728.............................................................. 12

*Kleveland v. Siegel & Wolensky*

215 Cal.App.4th 534 ............................................................... 10,13

PLAINTIFFS' OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

*Lackner v. LaCroix*
    (1979) 25 Cal.3d 747............................................................ 13

*Lanz v. Goldstone*
    (2015) 243 Cal.App.4th 441............................................... 17

*Lefebvre v. Lefebvre*
    199 Cal.App.4th 696 (2011)............................................... 11

*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*
    (2002) 99 Cal.App.4th 1179.............................................. 13

*Metabolife Int'l, Inc. v. Wornick*
    264 F.3d 832 (9th Cir.2001).............................................. 9

*Navellier v. Sletten*
    (2002) 29 Cal.4th 82........................................................... 9

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*
    (2005) 133 Cal.App.4th 658.............................................. 11

*Pope v. Motel 6,*
    121 Nev. 307, 114 P.3d 277 (2005) .................................. 18

*Rogers v. Home Shopping Network, Inc.*
    57 F. Supp. 2d 973 (C.D. Cal. 1999).................................. 9

*Sheldon Appel Co. v. Albert & Oliker*
    (1989) 47 Cal.3d 863.......................................................... 14,17

*Sierra Club Foundation v. Graham*
    (1999) 72 Cal.App.4th 1135.............................................. 17

*Soukup v. Law Offices of Herbert Hafif*
    (2006) 39 Cal.4th 260........................................................ 14

*Travelers Cas. Ins. Co. of Am. v. Hirsh,*
    No. 14-55539, 2016 WL 4120689 (9th Cir. Aug. 3, 2016) ......... 11

*Vargas v. City of Salinas*
    92 Cal.Rptr.3d 286 (2009)................................................ 11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

*Weisman v. Bower*

    (1987) 193 Cal.App.3d 1231 .......................................................

*Zamos v. Stroud*

    (2004) 32 Cal.4th 958........................................... 10,12 14,18

**<u>STATUTES</u>**

Code of Civil Procedure §128.5(a)....................................... 20

Code of Civil Procedure § 425.16 ....................................... 11,20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

## I.   INTRODUCTION.

This is an action for malicious prosecution involving baseless federal securities fraud allegations made against Plaintiffs Ironridge Global IV, Ltd., Ironridge Global Partners, LLC, John Kirkland and Brendan O'Neil (collectively, "Plaintiffs"). Defendants Needham Law Firm, A.P.C. and Carlos E. Needham (collectively, "Defendants") were counsel of record for Defendant ScripsAmerica, Inc. ("SA") in the underlying federal securities action which gave rise to this malicious prosecution action. Simply put, Defendants decided that they did not want to honor their legal obligations under the court-approved stipulation they entered into, and therefore, engaged in a scheme to bring baseless securities fraud claims against Plaintiffs to delay and avoid issuing shares of common stock to Plaintiffs as legally required. True to form, Defendants brought the instant anti-SLAPP motion before this Court without proper bases and for no reason other than to delay and harass Plaintiffs' appropriate efforts to recover their losses.

Defendants' anti-SLAPP motion should be denied because Plaintiffs can demonstrate a probability of success on the merits with regard to their malicious prosecution action. In doing so, Plaintiffs can demonstrate that the underlying federal securities action was commenced by or at the direction of the Defendants and was pursued to a legal termination in Plaintiffs' favor, was brought or prosecuted without probable cause, and was initiated with subjective malice.

Further, SA's own CEO during the pendency of the underlying federal securities action, Robert Schneiderman, admits that Ironridge never engaged in any improper or manipulative conduct with regard to SA or its stock, or that Ironridge ever sold stock in a manner that hurt SA or its stock price.  SA's CEO further admits that the drop in SA's stock price was "due to the number of factors completely unrelated to Ironridge."

The facts as set forth in the operative malicious prosecution complaint, and the submitted declarations from Plaintiffs Brendan O'Neil and John Kirkland, as well as

Defendant SA's own former CEO, Robert Schneiderman, serve as ample evidence to satisfy the low "minimal merit" test required.

## II.    STATEMENT OF FACTS.

### A. The Underlying State Court Appeal

On or about October 11, 2013, Plaintiff Ironridge Global IV, Ltd. ("Ironridge") filed a breach of contract complaint with the Los Angeles Superior Court, Case No. BC524230, to collect on a $686,962 debt owed by Defendant SA, Inc. ("SA"). [Complaint at ¶ 12]. In or about November 2013, Ironridge and SA filed a Stipulation for Settlement of Claims, which required SA to transfer 8,690,000 shares to Ironridge in satisfaction of the debt. [*Id.* at ¶ 12]. The shares issued to Ironridge were freely tradable and exempt from registration under the Securities Act of 1933, pursuant to Section 3(a)(10) of the Securities Act. [Request for Judicial Notice, ¶ 1(a), Exhibit A]. Further, in exchange for a complete release of the debt, SA agreed to an adjustment formula for the issuance (or return) of additional shares in the event the market price decreased (or increased) to certain levels. [Request for Judicial Notice, ¶ 1(a), Exhibit A]. The parties' agreement placed no cap on the number of shares Ironridge could sell in any given period. [Request for Judicial Notice, ¶ 1(a), Exhibit A]. As a result, SA–whose board approved the agreement–cannot contend that the transaction's terms were not fully disclosed. [Request for Judicial Notice, ¶ 1(a), Exhibit A; Declaration of Robert Schneiderman ("Schneiderman Decl.") ¶ 16].

On or about November 8, 2013, Judge Treu of the Los Angeles Superior Court issued an order approving the parties' Stipulation. [Complaint at ¶ 13]. On or about November 21, 2013, SA, Inc. issues 8,690,000 shares of its common stock to Ironridge, pursuant to the Stipulation. On or about February 10, 2014, Ironridge made a request for additional shares as a result of the adjustment provisions under the Stipulation due to drop in stock price. On or about February 27, 2014, SA issued 1,615,550 shares of its common stock to Ironridge for additional shares

pursuant to terms of the Stipulation for Settlement of Claims. [Complaint at ¶ 14]. On or about April 4, 2014, Ironridge again made a request for additional shares as a result of the adjustment provisions. [Complaint at ¶ 15]. This time, SA opposed this request for additional shares.

On or about May 6, 2014, Judge Treu issued an Order Enforcing Prior Order for Approval of Stipulation for Settlement of Claims, which ordered SA to issue Ironridge an additional 1,646,008 in common shares. [Complaint at ¶ 16]. On or about May 14, 2014, SA appealed the May 6, 2014 order, California Court of Appeal Case No. B256198. [Complaint at ¶ 17]. Thereafter, the California Court of Appeal issued its opinion dismissing SA's appeal, which was published at *Ironridge Global IV, Ltd. v. SA, Inc.,* 238 Cal. App. 4th 259 (2015), review denied, No. S228390 (Cal. Sept. 30, 2015). In its opinion, the Court of Appeal ruled as that "[b]ased on defendant's repeated violations of the trial court's order, plaintiff has moved to dismiss the appeal under the disentitlement doctrine." [Request for Judicial Notice, ¶ 3(a), Exhibit G]. The Court observed that "[s]ince entry of the order, defendant has transferred millions of shares of stock to third parties and has not issued any shares to plaintiff [Ironridge Global IV, Ltd.]." [*Id.*] The Court of Appeal concluded that "[w]e agree that dismissal is the appropriate remedy for defendant's [SA, Inc.] flagrant disregard for the order which is the subject of this appeal." [*Id.*] The Court of Appeal further determined that SA's claims in the appeal were "plainly without merit." [*Id.*]

### B. The Underlying Federal Securities Action

On or about May 22, 2014, almost immediately after the state court appeal to delay the issuance of stock, SA filed a lawsuit with the United States District Court for the Central District of California, Case No. CV-14-03962 SJO (AGRx), alleging securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5, breach of contract, and tortious bad faith against Ironridge Global IV, Ltd., Ironridge Global Partners, LLC, John Kirkland and Brendan O'Neil. [Complaint at

¶¶ 20-21]. SA filed this baseless federal lawsuit without probable cause and with malice, to harass Plaintiffs and to delay and avoid issuing shares of common stock as required. The Complaint was signed by Carlos E. Needham of the Needham Law Firm, A.P.C, who thereby certified that it was not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and that the claims and other legal contentions were warranted and that the factual contentions had evidentiary support. In fact, (a) the Complaint was presented solely for improper purposes, including to harass, cause unnecessary delay and increase the cost of litigation, (b) the claims and legal contentions were completely unwarranted, and (c) the factual contentions had no evidentiary support.

Thereafter, Plaintiffs filed a Motion to Dismiss or Stay SA's Complaint. In a published opinion at *SA, Inc. v. Ironridge Global*, LLC, 56 F. Supp. 3d 1121 (C.D. Cal. November 3, 2014), the Court granted in part and denied in part the motion to dismiss, and granted the motion to stay. The Court dismissed SA's declaratory relief claim under the *Rooker-Feldman* doctrine to the extent it sought a declaration that SA was excused from performing generally under a stipulation entered by the state court. The Court granted the Motion to Dismiss SA's Rule 10b-5 claim with leave to amend. Following this opinion, the only claims remaining in was SA's Rule 10b-5 claims, for which SA was granted leave to amend.

On or about December 3, 2014, Defendants filed a First Amended Complaint on behalf of SA, again alleging claims against Plaintiffs for: (i) securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5, (ii) breach of contract; (iii) tortious bad faith; and (iv) declaratory relief. In response, Plaintiffs filed a Motion to Dismiss the First Amended Complaint. On March 26, 2015, the Court issued an order granting the Motion to Dismiss the First Amended Complaint, giving SA leave to amend the complaint to address the deficiencies identified by the Court in the order. In its Order granting the Motion to Dismiss the First Amended Complaint, the Court held that the First Amended Complaint —just

like SA's original Complaint—failed to properly plead the essential elements of a federal securities fraud claim, including (1) manipulative conduct, (2) a misrepresentation or omission, (3) reliance, and (4) a strong inference of scienter. The Court also held that reliance could not be presumed based on the fraud-on-the-market theory, which left SA with no viable basis for pleading reliance in connection with its securities fraud claim.

On April 13, 2015, the attorney for Plaintiffs sent a letter to Defendants, cautioning him that SA cannot in good faith plead facts sufficient to overcome any, let alone all, of the myriad pleading deficiencies identified by the Court in its March 26, 2015 Order. [Declaration of Matthew Negrin ("Negrin Decl.") ¶ 7; Exhibit 2]. The letter further warned Defendants that its continued: (1) "pursuit of this claim will be not in good faith;" and (2) pursuit of the theory of market manipulation is "not remotely plausible." [Negrin Decl. ¶ 7; Exhibit 2].

Despite the March 26, 2015 Court Order and the April 13, 2015 letter, Needham filed a Second Amended Complaint on behalf of SA, for a third time alleging claims against Plaintiffs for: (i) securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5, (ii) breach of contract; (iii) tortious bad faith; and (iv) declaratory relief. In response, Plaintiffs filed a Motion to Dismiss the Second Amended Complaint.  In addition, Plaintiffs sent another letter to Defendants, warning them that their "continued assertion of groundless claims is improper." [Negrin Decl. ¶ 8; Exhibit 3]. Plaintiffs indicated that SA's Second Amended Complaint does not cure any of the fatal deficiencies that the Court identified in its orders dismissing SA's First Amended Complaint and its initial Complaint. [Negrin Decl. ¶ 8; Exhibit 3]. Finally, Plaintiffs warned Defendants in this letter that their "continued pursuit of this case would not be in good faith," as "SA's dissatisfaction with the stipulated judgement is not the basis for a federal securities claim or a redo of meritless state law claims, as numerous federal and state court orders now confirm." [Negrin Decl. ¶ 8; Exhibit 3].

Thereafter, in a published opinion by United States District Judge, Margaret M. Morrow, at *SA, Inc. v. Ironridge Global,* LLC, 119 F. Supp. 3d 1213 (C.D. Cal. August 11, 2015), the Court granted Plaintiffs' Motion to Dismiss the Second Amended Complaint, without granting SA further leave to amend, thus ending the case. [Request for Judicial Notice, ¶ 1(d), Exhibit D]. The Court held that "Scrips has now had three opportunities to plead viable claims. Despite being informed of its obligation to supply particularized allegations supporting a Rule 10b–5 claim, Scrips merely appended 200 pages of raw trading data to the complaint, leaving the court (and Ironridge) to sift through the data to ascertain which trades were purportedly manipulative and why they were so." [Request for Judicial Notice, ¶ 1(d), Exhibit D]. The Court determined that its "review of the data indicates that Ironridge's trades were not manipulative in the manner Scrips suggests." [Request for Judicial Notice, ¶ 1(d), Exhibit D]. The Court then concluded that "[g]iven the content of the second amended complaint, and the absence of any specific facts cited by Scrips that would cure the numerous deficiencies noted in this order, the court concludes that granting leave to amend would be futile, and dismisses Scrips' Rule 10b–5 claim with prejudice." [Request for Judicial Notice, ¶ 1(d), Exhibit D].

On January 12, 2016, United States District Judge, Honorable S. James Otero, issued an order awarding Plaintiffs $269,260 pursuant to their Motion for Attorney's Fees as prevailing party. [Request for Judicial Notice, ¶ 1(e), Exhibit E].

## C. SA's CEO Admits That Ironridge Never Engaged in Improper or Manipulative Conduct with Respect to Its Stock.

This Opposition is supported by statements made under oath by SA's own CEO during the pendency of the underlying federal securities action, Robert Schneiderman. SA's CEO confirms that the underlying federal securities action was baseless. [Schneiderman Decl. ¶¶ 2-16]. In his declaration in support of this Opposition, SA's CEO indicated as follows: "I have no knowledge that anyone at Ironridge ever engaged in any improper or manipulative conduct with regard to

SCRC [SA] or its stock, or that Ironridge ever sold stock in a manner that hurt the company or its stock price." [Schneiderman Decl. ¶ 4]. SA's CEO went on to state as follows: "to the best of my knowledge, Ironridge sold in a manner that was in full compliance with the terms of the parties' agreement and the Court's order, and that impacted the stock as little as possible." [Schneiderman Decl. ¶ 4]. SA's CEO indicated: "I have no knowledge that Ironridge ever acted in any way inconsistent with its ethical responsibilities under the agreement." [Schneiderman Decl. ¶ 4].

SA's stock was in steep decline in the Fall of 2013, having dropped more than 80% in less than four months, from a high of $0.97 per share on July 11, 2013, to $0.18 per share on November 7, 2013. [Schneiderman Decl. ¶ 3]. On November 8, 2013, SA entered into the Stipulation with Ironridge for the issue of the SA's shares. [Schneiderman Decl. ¶ 3]. The Stipulation was highly accretive to SA because the company was able to settle approximately $700,00 in debt which it could not afford to pay, in exchange for common equity. [Schneiderman Decl. ¶ 10]. Ironridge received the shares thereafter, and waited until December 3, 2013 before beginning to sell any shares. [Schneiderman Decl. ¶ 5]. SA's CEO admits that "this delay provided the opportunity for the exchange to be a catalyst to positive results, improved company performance, and higher stock price. [Schneiderman Decl. ¶ 5]. The market reacted well to the Stipulation, and the stock price increased to $0.23 on November 11, 2013." [Schneiderman Decl. ¶ 5]. Thereafter, the share price then gradually began to decline again, even though Ironridge did not sell any shares prior to December 3, 2013. [Schneiderman Decl. ¶ 5]. Over time the stock price continued to decline, but at a significantly slower rate than before the Stipulation. [Schneiderman Decl. ¶ 5].

SA issued a total of 11,953,558 common shares to Ironridge, but since November 8, 2013 had issued 50,553,766 shares to third parties, pursuant to financing agreements, consulting agreements, and for the liquidation of liabilities of SA. [Schneiderman Decl. ¶ 7]. Accordingly, as SA's CEO declares, there has been

a dramatically greater dilutive effect from issuing shares to third parties than to Ironridge. [Schneiderman Decl. ¶ 7]. Further, as of the end of 2014 the company had accounts payable and debt totaling over $5.9 million, which exceeds the total market capitalization of the company. [Schneiderman Decl. ¶ 8]. SA's auditors expressed substantial doubt about the entity's ability to continue as a going concern. [Schneiderman Decl. ¶ 8]. In addition, SA had incurred millions of dollars of convertible debt with toxic investor hedge funds, consultants and insiders, many of which converted into equity at substantial discounts, which may have caused the stock price to drop. [Schneiderman Decl. ¶ 8]. Further, SA's CEO admits that "due to the number of factors completely unrelated to Ironridge, the price of SA's common stock has declined." [Schneiderman Decl. ¶ 15]. SA's CEO further admits that he has no factual reason to believe that any decline in the stock price after November 11, 2013 was caused by Ironridge. [Schneiderman Decl. ¶ 5].

Moreover, Defendants falsely stated in all of SA's complaints that Ironridge sold a larger volume and percentage of sales than it actually did. [Declaration of John Kirkland ("Kirkland Decl.") ¶ 7]. Neither SA nor Defendants had any possible way of knowing what sales Ironridge had actually made on any particular day, what time, what price, or what number of shares were sold by Ironridge. [Kirkland Decl. ¶ 8]. As such, Defendants had to know that the very specific numbers he used in the complaints were either random guesses or simply made up. [Kirkland Decl. ¶ 8].

## III.    ANTI-SLAPP MOTIONS IN FEDERAL COURT.

Even though the Ninth Circuit has held that California's anti-SLAPP statute can be invoked in diversity cases, the Ninth Circuit and other California federal courts have procedurally limited its application. An anti-SLAPP motion is not analyzed or applied the same way in federal court as it is in the California state courts because the anti-SLAPP statute is a matter of state court procedure. More specifically, in federal court, the anti-SLAPP statute cannot be used in a manner that conflicts with the Federal Rules of Civil Procedure, which results in the

following outcome. If a defendant makes a motion to strike under the anti-SLAPP statute in federal court based on a failure of proof or evidence, the motion **must** be treated as though it is a motion for summary judgment and discovery must be developed sufficiently to permit summary judgment under Rule 56. *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (emphasis added). The Ninth Circuit agreed with the reasoning of *Rogers* and adopted this rule in *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir.2001). Similarly, if an anti-SLAPP motion to strike is based on the legal deficiencies of the complaint, a federal court **must** decide the motion in a manner that complies with the standards set by Federal Rules 8 and 12. *Rogers*, 57 F. Supp. 2d at 982. (emphasis added). In other words, the court must read the complaint broadly, take all well-pleaded allegations as true, and dismiss with leave to amend. *Id.* "Standards that put a more onerous burden on the nonmoving party would conflict with Rules 8 and 12. Therefore, they cannot apply in federal court." *Id.* at 982–83. As such, Defendants' analysis improperly assumes that California's anti-SLAPP statute has the same force and effect in federal court as it does in state court.

## IV.  STANDARD OF REVIEW FOR ANTI-SLAPP MOTIONS.

While the anti-SLAPP statute is designed to weed out lawsuits that lack merit, it does not allow a defendant to "escape the consequences of wrongful conduct by asserting a spurious First Amendment defense." *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93. Moreover, the Legislature has provided, and California courts have recognized, "substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism." *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65.

It is not disputed that malicious prosecution suits are subject to the anti-SLAPP statute. *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215. With that said, "it does not necessarily follow simply because a malicious prosecution suit can be subject to an anti-SLAPP motion that every anti-SLAPP motion brought against a

malicious prosecution suit is automatically valid." *Kleveland v. Siegel & Wolensky*, 215 Cal.App.4th 534, 556.

Thus, Plaintiffs will focus on demonstrating that Plaintiffs can show a reasonable probability of success on the merits with regard to their malicious prosecution cause of action. To establish a claim for malicious prosecution against Defendants, Plaintiffs must plead and prove that the prior action: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in Plaintiff's favor; (2) was brought (or prosecuted) without probable cause; and (3) was initiated with malice. *Zamos v. Stroud,* (2004) 32 Cal.4th 958, 965; *HMS Capital, Inc. v. Lawyers Title Company* (2004) 118 Cal.App.4th 204, 213.

## V. PLAINTIFFS CAN SHOW A PROBABILITY OF SUCCESS ON THE COMPLAINT FOR MALICIOUS PROSECUTION AND, THEREFORE, DEFENDANTS FAIL TO SATISFY THE SECOND STEP OF THE ANTI-SLAPP TEST.

### A. Plaintiffs Malicious Prosecution Action Is Not Based On The Underlying State Court Appeal

As a preliminary matter, Plaintiffs do not rely on the underlying state court appeal as their basis for the malicious prosecution action. Rather, Plaintiffs included information relating to the state court appeal to provide a holistic understanding of the events that gave rise to the underlying federal securities action. As the Complaint summarizes the nature of this case, "[t]his is an action for malicious prosecution involving baseless federal securities fraud allegations." [Complaint ¶ 11].

### B. Plaintiffs Need Only Meet A Minimal Evidentiary Burden To Show A Probability Of Success.

In ruling on an anti-SLAPP motion, the question is whether "accepting as true the evidence favorable to the plaintiff and evaluating the defendant's evidence only to determine whether the defendant has defeated the plaintiff's evidence as a matter of law," the plaintiffs have "made a prima facie showing of facts supporting the

cause of action," so as to establish a probability of prevailing on the merits sufficient to survive the motion to strike. *Travelers Cas. Ins. Co. of Am. v. Hirsh*, No. 14-55539, 2016 WL 4120689, at *2 (9th Cir. Aug. 3, 2016), quoting *Lefebvre v. Lefebvre*, 199 Cal.App.4th 696, 131 Cal.Rptr.3d 171, 174 (2011). The court should grant the motion only "if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Vargas v. City of Salinas*, 46 Cal. 4th 1, 20, 92 Cal.Rptr.3d 286 (2009). The determination that the plaintiff will prevail on the claim is made on the basis of the pleadings, as well as "supporting and opposing affidavits stating the facts upon which the liability or defense is based." Code of Civil Proc. sec. 425.16 subd. (b)(2); *HMS Capital, Inc. v. Lawyers Title Company* (2004) 118 Cal.App.4th 204, 211.

The California Supreme Court emphasized just how low a plaintiff's evidentiary burden is in opposing an anti-SLAPP motion in *Navellier*, by stating, "the statute poses no obstacle to suits that possess **minimal merit**." *Navellier v. Sletten*, 29 Cal.4th at 93. A plaintiff is not required "to prove the specified claim to the trial court; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675.

Further, in determining Plaintiffs' probability of success, the court should not "weigh credibility" or "evaluate the weight of the evidence." *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989. The court should not "weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim…." *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215. Weighing the evidence or making credibility determinations "would violate plaintiff's right to a jury trial." *Colt v. Freedom Communications, Inc.* (2003) 109 Cal.App.4th 1551,1557. Rather, "the court's responsibility is to accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it

has defeated that submitted by the plaintiff as a matter of law." *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212. Said another way, in the context of an anti-SLAPP motion, a plaintiff need not "prove" the facts necessary to support a judgment of probable cause; rather, a plaintiff only needs to offer "a sufficient prima facie showing of facts to sustain a favorable judgment." *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.

### C. Plaintiffs Can Show Probability Of Success On The Malicious Prosecution Claim.

California public policy supports "affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." *Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 771. Malicious prosecution is actionable because "it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice." *Zamos v. Stroud*, 32 Cal.4th at 969. More specifically, "[t]he individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings….The judicial process is adversely affected by a malicious prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals as instruments with which to maliciously injure their fellow men." *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 51.

Defendants argue that malicious prosecution is a "disfavored" tort and attempts to persuade this Court to not extend its application. [Motion, p. 10:10]. However, in the words of the California Supreme Court, "[t]his convenient phrase should not be employed to defeat a legitimate cause of action. We responded to an argument similar to defendants' over 30 years ago, reasoning, 'we should not be led so astray by the notion of a 'disfavored' action as to defeat the established rights of

the plaintiff by indirection." *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 53. In other words, arguing that malicious prosecution is "disfavored" does not create "new limitations on the substantive right." *Zamos v. Stroud*, 32 Cal.4th at 966.

### i. *Element 1*: The underlying federal securities action was commenced by or at the direction of the defendants and was pursued to a legal termination in plaintiffs' favor.

To be an actionable termination under a malicious prosecution claim, "termination must reflect on the merits of the underlying action." *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750. In determining the meaning of "favorable termination," courts must look to whether the termination is "of such a nature as to indicate the innocence of the accused" as opposed to a termination on "technical grounds, for procedural reasons." *Id.* Furthermore, when prior proceedings are terminated by means other than trial, "the termination must reflect on the merits of the case and the malicious prosecution plaintiff's innocence of the misconduct alleged in the underlying lawsuit." *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 217; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1191 (summary judgment granted and sanctions issued).

Here, Plaintiffs' undoubtedly received favorable termination of the underlying federal securities action on the merits. In fact, Defendants could not even get past the initial pleading stage. In August 2015, the court granted Plaintiffs' motion to dismiss the securities action with prejudice, indicating "further amendment was futile." [Request for Judicial Notice, ¶ 1(d), Ex. D, p.68:17-22].

### ii. *Element 2*: The underlying federal securities action was brought and continued without probable cause.

An action is deemed to have been pursued without probable cause if "it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted." *Kleveland v. Siegel & Wolensky*, LLP (2013) 215 Cal.App.4th 534, 550. The court must "determine whether, on the

13

basis of the facts known to the defendant, the institution of the prior action was legally tenable." *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878. Put another way, "[t]he resolution of that question of law calls for the application of an objective standard to the facts on which the defendant acted. The test the court is to apply is whether "any reasonable attorney would have thought the claim tenable...." *Id.* at 886. Moreover, a plaintiff need only establish that there was no probable cause for at least one theory of liability. *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 293 (plaintiff was required to show only that defendants lacked probable cause for one of four causes of action); *Crowley v. Katleman* (1994) 8 Cal.4th 666, 671.

Further, in determining the probable cause element, the same standard applies "to the continuation as to the initiation of a suit." *Zamos v. Stroud* (2004) 32 Cal.4th 958, 970. The Supreme Court of California held in *Zamos* that "[c]ontinuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset. *Id.* at 969. Accordingly, the court held that "an attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause." *Id.* at 970.

It is abundantly clear that Defendants initiated the underlying federal securities action without probable cause. SA's CEO admits in a declaration in support hereof that SA knew at the time of the filing, and during the pendency of the underlying federal securities action, that Ironridge did not engage "in any improper or manipulative conduct with regard to SCRC [SA] or its stock," and further knew that Ironridge did not sell "stock in a manner that hurt the company [SA] or its stock price." [Schneiderman Decl. ¶4]. SA's CEO further admits in his declaration that the price of SA's common stock declined "due to the number of factors completely unrelated to Ironridge." [Schneiderman Decl. ¶15].

Moreover, the underlying federal securities action was replete with falsehoods that had no basis in fact, and was simply another groundless attempt by Defendants to delay and avoid their legal obligation to issue stock. As discussed above, the underlying parties entered into a stipulation for settlement, in which SA was to issue additional shares of common stock to Ironridge should the SA share price drop, pursuant to an agreed upon formula. In the following months, Ironridge fully and completely complied with all of its obligations and only sold shares in full compliance with the terms of the parties' agreements, requirements of the registered broker-dealer handling the sales on behalf of Ironridge and the court's orders. [Declaration of Brendan O'Neil ("O'Neil Decl.)" ¶ 4]. However, when the market reacted well to the court-approved stipulation, and the previously-declining price of the stock went up on the announcement of the settlement of claims, SA refused to issue additional shares as agreed. [O'Neil Decl., ¶ 8; Schneiderman Decl. ¶ 5].

In an effort to further delay, complicate, and avoid their legal obligation to issue additional stock, Defendants fabricated various securities fraud allegations against Plaintiffs and initiated a sham federal lawsuit. Contrary to Defendants' baseless claims, Ironridge did not in any way intentionally drive down the stock price and did not sell in a manner designed to hurt the company or its stock. [O'Neil Decl. ¶ 10; Kirkland Decl. ¶ 4]. SA's own CEO at the time admits the same. [Schneiderman Decl. ¶¶ 4,5,7, 9, 15]. In fact, Ironridge understood that driving a stock price down to zero is a recipe for failure, not long term gains. [O'Neil Decl. ¶ 10]. Moreover, there is nothing wrongful or manipulative about selling stock you are entitled to sell, notwithstanding that doing so may impact the price. Said another way, the simple reality that selling stock may cause the stock price to drop does not make the act of selling stock a deceptive act. Ironridge was entitled to sell as many shares as it wanted, any time it wanted, at any price it wanted. That is not market manipulation; rather, that is the agreement the underlying parties reached after thoughtful negotiations, which was fully disclosed

to the state court and the public. As the court noted in dismissing the original, first amended, and second amended complaint, "absent particularized allegations plausibly suggesting market manipulation, they give rise to an alternate, more compelling inference – i.e., that Scrips entered into the agreement knowing that Ironridge could sell the shares Scrips had issued in any manner Ironridge wished." [Request for Judicial Notice, ¶ 1(c), Exhibit C, p.44:6-9; ¶ (d), Exhibit D, p.60:4-7].

Even if we assume Defendants reasonably believed the underlying securities action was legally tenable when the lawsuit was initially brought, which they did not, Defendants *should have* become aware that their allegations were baseless after their initial complaint was dismissed and were *certainly* aware that their allegations were baseless after their first amended complaint was dismissed. According to the evidence provided, Defendants received detailed orders from the court explaining the deficiencies in the original and first amended complaint; however, even with ample guidance from the court, Defendants *still* failed to properly remedy the deficiencies.  In fact, as the court pointed out in its August 11, 2015 order granting defendants motion to dismiss, "[d]espite being informed of its obligation to supply particularized allegations supporting a Rule 10b-5 claim, Scrips merely appended 200 pages of raw trading data to the [second amended] complaint…." [Request for Judicial Notice, ¶ 1(d), Exhibit D, p. 67:13-15]. The court further noted that, "[d]espite having had three opportunities to plead a viable claim, two of which followed detailed orders noting numerous deficiencies, Scrips has *still* failed to plead *any* specific allegations that [Ironridge] did anything to manipulate the market." [Request for Judicial Notice, ¶ 1(d), Exhibit D, p. 68:8-11]. (emphasis added). Furthermore, as the evidence provides, Plaintiffs' counsel in the underlying securities action sent two detailed letter to Defendants—one after the original complaint was dismissed and another after the first amended complaint was dismissed—explaining why the underlying securities action was completely groundless and that the action should not be further pursued. [Negrin Decl., ¶¶ 7-8,

Exhibits 2-3]. These letters would put any reasonably attorney on notice of their baseless claims. However, instead of voluntarily dismissing their baseless lawsuit, Defendants continued their prosecution of the underlying securities fraud action after learning it was baseless for no reason other than to delay the rightful issuance of stock to Ironridge. Accordingly, Plaintiffs have met their minimal burden of showing a probability of success on his claim that Defendants lacked probable cause to bring and continue the underlying federal securities action.

### iii. *Element 3*: The underlying federal securities action was initiated with malice.

The malice element of malicious prosecution goes to the defendant's subjective intent in initiating the prior action. *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874. For purposes of a malicious prosecution claim, malice "is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose." *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157. As an element of malicious prosecution, "malice at its core refers to an improper motive for bringing the prior action." *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 451. Further, malice, as an element of liability, reflects the core function of malicious prosecution, "which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement." *Id.* at 452. Since malice concerns a defendant's mental state, "it necessarily presents a question of fact." *Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 467.

Lawsuits with "the hallmark of an improper purpose" include, but are not necessarily limited to, "those in which: "... (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use

of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." *Id.*

Most importantly, malice may be inferred from circumstantial evidence, such as the Defendant's lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose. *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1114; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225 ("Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence."); *Francis v. Wynn Las Vegas*, 557 F. App'x 662, 665 (9th Cir. 2014) ("Francis has put forth some evidence of actual malice—a reasonable jury could infer malice from Wynn's filing a complaint stating that the casino had submitted Francis' marker within '30 days' as was its 'normal course of business,' when in fact it submitted the marker some sixteen months after execution. *See Pope v. Motel 6,* 121 Nev. 307, 114 P.3d 277, 284 (2005) (holding that actual malice may be 'proven by demonstrating that a statement is published ... with reckless disregard for its veracity'). The district court correctly determined that Francis made a sufficient showing of malicious prosecution to defeat an anti-SLAPP motion.").

Lastly, based on reasonable inferences made from the *Zamos* case, malice formed after the filing of a complaint is actionable. *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226. As the *Zamos* court reasoned, "[c]ontinuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset." *Zamos v. Stroud* (2004) 32 Cal.4th 958, 969.

In *HMS Capital, Inc. v. Lawyers Title Company*, the court found the combination of a frivolous claim, a failure to pursue meaningful discovery by plaintiff, being advised by defendants of the baseless claim, and an attempt to "squeeze a settlement on a baseless case" was sufficient evidence of malice to defeat an anti-SLAPP motion. 118 Cal.App.4th 204, 218-19. The underlying

federal securities matter was baseless, Ironridge advised Defendants the claim was baseless, and Defendants attempted to "squeeze a settlement" on said baseless action [Kirkland Decl. ¶ 12]

Further, there are sufficient grounds for an inference that Defendants were motivated by greed, vindictiveness, and a desire to intimidate, rather than out of any genuine intention that Plaintiffs would actually be found liable for securities fraud. SA's own CEO declares that SA's stock price drop was due to facts independent of Ironridge and further that Ironridge did not engage in any improper or manipulative conduct with respect to its selling of SA stock. [Schneiderman Decl. ¶4].

Defendants made multiple false accusations in their Complaints, which they must have known were false. [Kirkland Decl. ¶¶ 8, 10, 11]. Despite being advised in writing by Plaintiffs *on two occasions* that the securities fraud claims were completely baseless and violated obligations under Rule 11, Defendants continued to prosecute the baseless claims. [Negrin Decl., ¶¶ 7-8, Exhibits 2-3].

Moreover, in the First Amended Complaint, Defendants added a false claim that Plaintiffs defrauded SA by concealing the involvement of David Sims in the transaction. [Kirkland Decl. ¶ 10]. However, Mr. Sims signed the term sheet as Director of Ironridge. [Kirkland Decl. ¶ 10]. As such, Defendants were obviously aware of his involvement. [Kirkland Decl. ¶ 10]. Although Mr. Needham attached a copy of the term sheet to the Complaints, he left off the final page of the term sheet bearing Mr. Sims' name and signature, to conceal the truth. [Kirkland Decl. ¶ 10].

Furthermore, in the Second Amended Complaint prepared by Defendants, Mr. Needham added a false claim that the majority of the time Ironridge sold shares at the low of the day. [Kirkland Decl. ¶ 11]. He attached raw data of all trades, and falsely asserted the sales at low of the day were Ironridge sales. [Kirkland Decl. ¶ 11]. His claims about the data in no way represent actual reality. [Kirkland Decl. ¶ 11]. He had no way of knowing which sales were actually Ironridge's, and therefore simply lied. [Kirkland Decl. ¶ 11].

The complete lack of probable cause and multiple false statements in multiple complaints, along with the circumstances surrounding the federal securities claim, meet the minimum evidentiary standard of showing Plaintiffs have probable cause to believe Defendants acted with malice by bringing the federal securities action against Plaintiffs.

## VI.    PLAINTFFS ARE ENTITLED TO SANCTIONS.

Code of Civil Procedure section 425.16(c)(1) provides, "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Further, Code of Civil Procedure Section 128.5(a) provides, a court may order a party or party's attorney "to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.

Based on the above arguments, it is clear that Defendants motion has no merit and that this motion has been brought in bad faith to intimidate Plaintiffs and cause delay. Sanctions against Defendants are appropriate pursuant to Code of Civil Procedure sections 128.5 and 425.16(c)(1). As set forth in the Declaration of Matthew Negrin, Plaintiffs are entitled to $19,642.50 in sanctions for attorneys' fees incurred in defense of this frivolous motion. [Negrin Decl. ¶5].

## VII.   CONCLUSION.

The Court should deny Defendants' anti-SLAPP Motion.

Dated: October 7, 2016                    **MAKAREM & ASSOCIATES, APLC**

By:   /s/ Matthew Negrin /s/
    MATTHEW NEGRIN
    Attorneys for Plaintiffs