**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (SBN 180442)
Matthew J. Negrin, Esq. (SBN 227429)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1740
Phone: (310) 312-0299; Fax: (310) 312-0296

Attorneys for Plaintiffs
IRONRIDGE GLOBAL IV, LTD.,
IRONRIDGE GLOBAL PARTNERS, LLC,
JOHN KIRKLAND, and BRENDAN O'NEIL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONRIDGE GLOBAL IV, LTD., a British Virgin Islands business company; IRONRIDGE GLOBAL PARTNERS, LLC, a U.S. Virgin Islands limited liability company; JOHN KIRKLAND, an individual; and BRENDAN O'NEIL, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SCRIPSAMERICA, INC., a Delaware corporation; NEEDHAM LAW FIRM, A.P.C., a California corporation; CARLOS E. NEEDHAM, and individual, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:16-CV-05335<br>[Assigned to Hon. Dolly M. Gee]<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR MALICIOUS PROSECUTION**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Ironridge Global IV, Ltd., Ironridge Global Partners, LLC, John Kirkland and Brendan O'Neil complain and allege as follows:

///

///

## JURISDICITON AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. section 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. section 1391 because a substantial part of the breaches, acts, and omissions alleged in this complaint took place in Los Angeles, California.

## THE PARTIES

3. Plaintiff Ironridge Global IV, Ltd. ("GLOBAL IV"), is a British Virgin Islands business company, with its principal place of business in Road Town, Tortola, British Virgin Islands. GLOBAL IV is an institutional investor that makes investments in public companies.

4. Plaintiff Ironridge Global Partners, LLC ("PARTNERS LLC") is a United States Virgin Islands limited liability company with its principal place of business in St. Thomas, United States Virgin Islands. Until January 2015, PARTNERS LLC was a shareholder of GLOBAL IV.

5. Plaintiff John Kirkland ("KIRKLAND") is an individual who is a permanent resident of St. Thomas, United States Virgin Islands. KIRKLAND is a licensed attorney who practiced securities law for more than 20 years, and earns his living as a professional investment advisor to investment funds. Until July 2014, KIRKLAND was one of four directors of PARNERS LLC, and until December 2014, he was a minority member of PARTNERS LLC.

6. Plaintiff Brendan O'Neil ("O'NEIL," and together with GLOBAL IV, PARTNERS LLC and KIRKLAND, shall be collectively referred to as "PLAINTIFFS" and each a "PLAINTIFF") is an individual who is a permanent resident of St. Thomas, United States Virgin Islands. O'NEIL is a CFA charterholder, was previously a registered investment advisor, and earns his living

as a professional investment advisor to investment funds. Until July 2014, O'NEIL was one of four directors of PARNERS LLC, and until December 2014, he was a minority member of PARTNERS LLC.

7. Defendant ScripsAmerica, Inc. ("SCRIPSAMERICA") is a Delaware corporation with its principal place of business in Clifton, New Jersey.

8. Defendant Needham Law Firm, A.P.C. ("LAW FIRM") is a California corporation with its principal place of business in Valencia, California.

9. Defendant Carlos E. Needham ("LAWYER" and together with SCRIPSAMERICA and LAW FIRM, shall be collectively referred to as "DEFENDANTS" and each a "DEFENDANT"), is an individual who is a permanent resident of Los Angeles County, California. The LAW FIRM and the LAWYER were counsel of record for SCRIPSAMERICA in the FEDERAL COURT ACTION (defined below) which gave rise to the malicious prosecution allegations herein, as well as in the related STATE COURT ACTION (defined below).

10. PLAINTIFFS are ignorant of the true names and capacities of defendants sued herein as DOES 1 – 10, inclusive, and, therefore, sues these defendants by such fictitious names. PLAINTIFFS will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFFS are informed and believe and thereon allege that none of the fictitiously named defendants is an alien or citizen of the U.S. Virgin Islands, and each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged.

## NATURE OF THE CASE

11. This is an action for malicious prosecution involving baseless federal securities fraud allegations. DEFENDANTS engaged in a scheme to delay and avoid issuing shares of SCRIPSAMERICA common stock as required by a Los Angeles Superior Court order. DEFENDANTS engaged in this scheme with malice

and without probable cause, by filing a baseless federal action, to harass and intimidate PLAINTIFFS and to delay and avoid issuing shares of SCRIPSAMERICA common stock to GLOBAL IV as required. The Court dismissed these baseless federal securities fraud claims with prejudice. DEFENDANTS conduct was not only tortious, it was malicious, fraudulent and oppressive, entitling PLAINTIFFS to both compensatory and punitive damages, as well as other relief. PLAINTIFFS do not rely on the underlying state court action and appeal related thereto as their basis for the malicious prosecution action, but rather have included information relating to the state court action and related appeal to provide a necessary background to understand the events that gave rise to the DEFENDANTS filing of the underlying baseless federal securities action.

## THE UNDERLYING STATE COURT MATTER

12. On October 11, 2013, GLOBAL IV filed breach of contract collection action, titled *Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.*, Los Angeles Superior Court Case No. BC524230 ("STATE COURT ACTION"), to collect on accounts payable debts in the amount of $686,962 owed by SCRIPSAMERICA to GLOBAL IV, pursuant to receivables purchase agreements. PARTNERS LLC, KIRKLAND and O'NEIL were not parties in the STATE COURT ACTION.

13. On November 8, 2013, in the STATE COURT ACTION, the Court issued an order approving the parties' Stipulation for Settlement of Claims ("STIPULATION FOR SETTLEMENT"). Pursuant to the STIPULATION FOR SETTLEMENT, SCRIPSAMERICA was to issue 8,690,000 shares of common stock to GLOBAL IV in satisfaction of the outstanding accounts payables owed to GLOBAL IV. Pursuant to the STIPULATION FOR SETTLEMENT, SCRIPSAMERICA was to issue additional shares of common stock to GLOBAL IV should the SCRIPSAMERICA share price drop, pursuant to an agreed upon formula.

14. On February 27, 2014, SCRIPSAMERICA issued an additional 1,615,550 shares of its common stock to GLOBAL IV, due to a drop in its share price, pursuant to GLOBAL IV's request under the terms of the STIPULATION FOR SETTLEMENT.

15. On April 4, 2014, GLOBAL IV made another request for SCRIPSAMERICA to issue additional shares of its common stock to GLOBAL IV, due to another drop in its share price, pursuant to the terms of the STIPULATION FOR SETTLEMENT. SCRIPSAMERICA failed to comply with this request.

16. On May 6, 2014, in the STATE COURT ACTION, the Court entered an order compelling SCRIPSAMERICA to issue an additional 1,646,008 of its common stock to GLOBAL IV, and prohibiting SCRIPSAMERICA from transferring stock to any third parties until these outstanding shares were transferred to GLOBAL IV ("STATE COURT ORDER").

17. On May 14, 2014, in an effort to delay the issuance of these additional shares of stock to GLOBAL IV as required by the STATE COURT ORDER, SCRIPSAMERICA appealed this STATE COURT ORDER ("STATE COURT APPEAL").

18. Thereafter, in the STATE COURT APPEAL, the California Court of Appeal issued its opinion dismissing SCRIPSAMERICA's appeal of the STATE COURT ORDER, which was published at *Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.*, 238 Cal. App. 4th 259 (2015), review denied, No. S228390 (Cal. Sept. 30, 2015) ("APPELLATE COURT OPINION"). In its opinion, the Court of Appeal ruled as follows:

> Defendant [ScripsAmerica, Inc.] appealed, arguing that the trial court lacked authority to restrain it from transferring shares to third parties, and that the court could not provide injunctive relief on an ex parte basis. Since entry of the order, defendant has transferred millions of shares of stock to third parties and has not issued any shares to plaintiff [Ironridge Global IV, Ltd.]. Based on defendant's repeated violations of the trial court's order, plaintiff has moved to dismiss the appeal under the disentitlement doctrine. **We agree that dismissal is the appropriate remedy for defendant's [ScripsAmerica, Inc.] flagrant**

**disregard for the order which is the subject of this appeal**. (emphasis added)

19. The Court of Appeal further ruled that ScripsAmerica, Inc.'s claims in the appeal were "plainly without merit." Finally, the Court of Appeal ruled that:

> Defendant had no cause to disobey the court's order, but did so, repeatedly. Defendant could have sought a stay of the order, but failed to do so. Defendant also could have sought a writ of supersedeas in this court. Finding that a balance of the equities weighs in favor of dismissal, we grant plaintiff's motion.

## UNDERLYING FEDERAL COURT MATTER

20. On May 22, 2014, a week after it filed the STATE COURT APPEAL, SCRIPSAMERICA filed an action titled, *ScripsAmerica, Inc. v. Ironridge Global LLC*, *et al*., United States District Court for the Central District of California Case No. CV 14-03962 SJO ("FEDERAL COURT ACTION").

21. In the FEDERAL COURT ACTION, SCRIPSAMERICA alleged causes of action against GLOBAL IV, PARTNERS LLC, KIRKLAND and O'NEIL for: (i) securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5, (ii) breach of contract; (iii) tortious bad faith; and (iv) declaratory relief.

22. The Complaint in the FEDERAL COURT ACTION specifically alleges, among other things, as follows:

> This case arises from a fraudulent scheme by Defendant IRONRlDGE GLOBAL LLC ("IRONRlDGE") and its agents and control persons JOHN KIRKLAND ("KIRKLAND") and BRENDAN O'NEILL ("O'NEILL") to acquire stock of Plaintiff through a fraudulent and deceptive scheme, in which Plaintiff agreed to provide a certain value of stock as consideration to IRONRIDGE under a formula based on Plaintiff's stock price. In order to enrich itself at the expense of Plaintiff and its shareholders, and using a manipulative and deceptive device and contrivance, IRONRIDGE willfully and knowingly artificially manipulated the market price of Plaintiffs stock by dumping shares in order to increase its ownership share in Plaintiff, contrary to its representations to Plaintiff. By engaging in such conduct, IRONRIDGE

and its Defendant directors violated Section 10(b) of the Securities Exchange Act of 1934,15 U.S.C. 78j(b), and rule 10b-5 thereunder, 17 C.F.R. §240.l0b-5. The Defendants' tortious misconduct further violated applicable provisions of state law.

23. The Complaint in the FEDERAL COURT ACTION was signed by the LAWYER who thereby certified that it was not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and that the claims and other legal contentions were warranted and that the factual contentions had evidentiary support. In truth and in fact, (a) the Complaint was presented solely for improper purposes, including to harass, cause unnecessary delay and needlessly increase the cost of litigation, (b) the claims and legal contentions were completely unwarranted, and (c) the factual contentions had no evidentiary support. In further trust and fact, the Complaint was filed with the intent to cause delay in the issuance of the SCRIPSAMERICA to GLOBAL IV pursuant to the STATE COURT ORDER and/or to force GLOBAL IV to cease its enforcement of the STATE COURT ORDER.

24. SCRIPSAMERICA's filing and maintenance of this baseless FEDERAL COURT ACTION, devoid of probable cause, gave rise to this malicious prosecution action.

25. On May 27, 2014, SCRIPSAMERICA issued a press release publicly announcing its filing of the FEDERAL COURT ACTION against PLAINTIFFS and stating that they had been sued in federal court for securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5.

26. On May 27, 2014, SCRIPSAMERICA filed a current report on Form 8-K with the U.S. Securities and Exchange Commission regarding its filing of the FEDERAL COURT ACTION against PLAINTIFFS and again stating that PLAINTIFFS had been sued in federal court for securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5.

27. In addition, on information and belief SCRIPSAMERICA sent a copy of its Complaint in the FEDERAL COURT ACTION to the U.S. Securities and Exchange Commission, which resulted in the filing of Administrative Proceeding File No. 3-16649, *In the Matter of Ironridge Global Partners, LLC, Ironridge Global IV, Ltd.*, in which SCRIPSAMERICA's Chief Executive Officer was listed as a witness. Said administrative proceeding was subsequently stayed by the U.S. District Court.

28. Thereafter, in the FEDERAL COURT ACTION, PLAINTIFFS PARTNERS LLC, KIRKLAND and O'NEIL filed a Motion to Dismiss or Stay ScripsAmerica, Inc.'s Complaint. In a published opinion at *ScripsAmerica, Inc. v. Ironridge Global, LLC*, 56 F. Supp. 3d 1121 (C.D. Cal. November 3, 2014), the Court granted in part and denied in part the motion to dismiss, and granted the motion to stay, including as follows:

- *Rooker–Feldman* doctrine barred in part corporation's declaratory relief claim;
- corporation failed to plead with particularity conduct constituting market manipulation, as required to state a securities fraud claim; and
- corporation failed to allege reliance on LLC's allegedly fraudulent statements.

29. The Court dismissed SCRIPTSAMERICA's declaratory relief claim under the *Rooker-Feldman* doctrine to the extent it sought a declaration that SCRIPTSAMERICA was excused from performing generally under a stipulation entered by the state court. The Court denied defendants' motion to dismiss on *Younger* abstention grounds, but stayed SCRIPTSAMERICA's breach of contract, tortious bad faith, and declaratory relief claims under the *Colorado River* doctrine. Finally, the Court granted defendants' motion to dismiss SCRIPTSAMERICA's Rule 10b-5 claim with leave to amend.

30. Following this opinion, the only claims remaining in the FEDERAL COURT ACTION were SCRIPSAMERICA's Rule 10b-5 claims, for which SCRIPSAMERICA was granted leave to amend.

31. On December 3, 2014, SCRIPSAMERICA filed a First Amended Complaint, again alleging claims against PLAINTIFFS for: (i) securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5, (ii) breach of contract; (iii) tortious bad faith; and (iv) declaratory relief.

32. PLAINTIFFS PARTNERS LLC, KIRKLAND AND O'NEIL then filed a Motion to Dismiss the First Amended Complaint.

33. On March 26, 2015, the Court in the FEDERAL COURT ACTION issued an order granting the Motion to Dismiss the First Amended Complaint, giving SCRIPSAMERICA leave to amend the complaint to address the deficiencies identified by the Court in the order.

34. In its Order granting the Motion to Dismiss the First Amended Complaint, the Court held that the First Amended Complaint —just like SCRIPSAMERICA's original Complaint—failed to properly plead the essential elements of a federal securities fraud claim, including (1) manipulative conduct, (2) a misrepresentation or omission, (3) reliance, and (4) a strong inference of scienter. In particular, the Court rejected as deficient SCRIPSAMERICA's new and unsupported allegations regarding PLAINTIFFS and David Sims—including the demonstrably false allegations that SCRIPSAMERICA was unaware of Mr. Sims's involvement, that PLAINTIFFS' Section 13(d) disclosure statements were somehow fraudulent, and that PLAINTIFFS engaged in marking the close and "bid whacking." (Order at pps. 20-29) The Court also held that reliance could not be presumed based on the fraud-on-the-market theory, which left SCRIPSAMERICA with no viable basis for pleading reliance in connection with its securities fraud claim. (Order at pps. 34-39)

35. On April 13, 2015, the attorney for PLAINTIFFS PARTNERS LLC, KIRKLAND AND O'NEIAL sent a letter to DEFENDANTS, stating as follows:

> The Court's Order [March 26, 2015 Order] should bring this case to an end. Scrips cannot in good faith plead facts sufficient to overcome any, let alone all, of the myriad pleading deficiencies identified by the Court. The stipulated judgment alone precludes Scrips from pleading a misrepresentation or omission, reliance, and scienter. Nor has Scrips ever pled any facts to support its allegations of manipulative trading activity, because no such facts exist. Indeed, Scrips already overreached by including knowingly false allegations regarding Mr. Sims in the FAC, and any new allegations would likewise lack evidentiary support.
>
> In short, the continued pursuit of this claim will be not in good faith and would not be consistent with your obligations under Rule 11. Scrips entered into a contract that it now regrets. But Scrips's dissatisfaction with the stipulated judgment is not the basis for a federal securities claim, as the Court's two Orders confirm. Nor is Scrips's theory of market manipulation remotely plausible. Ironridge sells stock in a manner designed to maximize its return. That generally means selling as many shares as possible, at the highest possible price, in the manner that least impacts the price, and the overwhelming and incontrovertible evidence will show that Ironridge always so instructed the independent brokers who actually sold Scrips's shares. Given that Ironridge could have sold all of its shares in a single day, the claim that Ironridge intentionally tried to drive down the price by dribbling out shares over many months is specious. Moreover, the last year when Ironridge has had no shares to sell, Scrips's stock price has continued with its typical volatility from a high of $0.22 to a recent low of $0.07, and this period includes all of the trading days that determine pricing under the stipulated order.

36. Despite the March 26, 2015 Court Order and PLAINTIFFS' April 13, 2015 letter, SCRIPSAMERICA filed a Second Amended Complaint, for a third time alleging claims against PLAINTIFFS for: (i) securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5, (ii) breach of contract; (iii) tortious bad faith; and (iv) declaratory relief.

37. PLAINTIFFS then filed a Motion to Dismiss the Second Amended Complaint. In addition, PLAINTIFFS sent another letter to DEFENDANTS, stating as follows:

> Your continued assertion of groundless claims is improper and we demand that you withdraw the SAC.
>
> Having been through three rounds of pleadings, it is abundantly clear that (a) ScripsAmerica, Inc. ("Scrips") cannot in good faith state a claim for securities fraud, (b) the factual contentions made in the three iterations of Scrips's complaint are without evidentiary support, and (c) Scrips's state law claims, tacked on in an obvious attempt to circumvent the stipulated judgment and Judge Treu's enforcement order, are meritless, as recently affirmed by the California Court of Appeal.
>
> Scrips's SAC does not cure any of the fatal deficiencies that the Court identified in its orders dismissing Scrips's First Amended Complaint and its initial Complaint. Nothing in the SAC changes (or can change) the fact that lronridge and Scrips agreed on the terms of the purchase of Scrips's debt, the formula for calculating the stock consideration, and lronridge's unrestricted right to sell that stock. As the Court has held twice now, the terms of this transaction were fully disclosed. Scrips's SAC regurgitates many of the misrepresentation and omission claims that the Court has already rejected, including the alleged misuse of the adjustment mechanism, the purported involvement of David Sims, the use of multiple brokerage accounts, and the promise that Ironridge purportedly made not to engage in manipulative conduct. But Scrips did not plead any new facts to support these allegations, let alone to compel a different result.
>
> Scrips's new allegations concerning manipulative conduct, reliance, and scienter are deficient and baseless. First, Scrips' s only new allegation of manipulative conduct is so-called bid-whacking, which is neither supported by case law nor the deluge of data supposedly analyzed by Scrips's mystery expert. Second, Scrips will never be able to avail itself of the fraud-on-the-market presumption 10 show reliance because Scrips has already pled that it relied on statements and assurances from lronridge, not on the efficiency of the market, as the Court has already noted twice. Scrips did not even attempt to plead around that fact, nor can it. Third, Scrips's "new" scienter allegations are just the rephrasing

> of already rejected pleadings or conclusory allegations bootstrapped from the deficient manipulative conduct allegations. Neither gives rise to a compelling inference of scienter. Anyone of these defects is fatal to Scrips's federal securities fraud claim; the fact that they all fail simply confirms Scrips's allegations are without factual or legal merit.
>
> ***
>
> Scrips's state law claims are (and have always been) duplicative of the fraud and breach of contract claims that Scrips asserted in state court and that Judge Treu rejected. The California Court of Appeal has now decided Scrips's appeal of the state court order, and the appellate court's decision confirms that Scrips's claims "are plainly without merit."
>
> ***
>
> In short, the continued pursuit of this case would not be in good faith and would not be consistent with your obligations under Rule 11. Scrips entered into a contract it now regrets. But Scrips's dissatisfaction with the stipulated judgement is not the basis for a federal securities claim or a redo of meritless state law claims, as numerous federal and state court orders now confirm.

38.   In a published opinion at *ScripsAmerica, Inc. v. Ironridge Global, LLC*, 119 F. Supp. 3d 1213 (C.D. Cal. August 11, 2015), the Court granted PLAINTIFFS' Motion to Dismiss the Second Amended Complaint, without granting SCRIPSAMERICA further leave to amend, thus ending the case ("ORDER DISMISSING FEDERAL ACTION"). The Court held as follows:

> Scrips has now had three opportunities to plead viable claims. Despite being informed of its obligation to supply particularized allegations supporting a Rule 10b–5 claim, Scrips merely appended 200 pages of raw trading data to the complaint, leaving the court (and Ironridge) to sift through the data to ascertain which trades were purportedly manipulative and why they were so. The court's review of the data indicates that Ironridge's trades were not manipulative in the manner Scrips suggests.
>
> ***
>
> Despite having had three opportunities to plead a viable claim, two of which followed detailed orders noting numerous deficiencies, Scrips has still failed to plead any "specific allegations that [Ironridge] did anything to manipulate the market." ATSI II, 493 F.3d at 103. This leads the court to conclude that leave to amend would be futile.
>
> ***

> Given the content of the second amended complaint, and the absence of any specific facts cited by Scrips that would cure the numerous deficiencies noted in this order, the court concludes that granting leave to amend would be futile, and dismisses Scrips' Rule 10b–5 claim with prejudice.
>
> \*\*\*
>
> For the reasons stated, the court grants Ironridge's motion to dismiss Scrips' Rule 10b–5 claim with prejudice. The court declines to exercise supplemental jurisdiction over Scrips' state law claims. The second amended complaint is therefore dismissed in its entirety.

39. A final judgment was thereafter entered by the Court in the FEDERAL COURT ACTION dismissing the entire action in favor of PLAINTIFFS.

40. On January 12, 2016, the Court in the FEDERAL COURT ACTION issued an order awarding PLAINTIFFS GLOBAL IV, KIRKLAND and O'NEIL $269,260 pursuant to their Motion for Attorney's Fees as prevailing parties in the FEDERAL COURT ACTION.

41. Not surprisingly, in yet another delay tactic, SCRIPSAMERICA appealed the January 12, 2016 Order to the Ninth Circuit Court of Appeal. However, when faced with enforcement of the attorney fee award, SCRIPSAMERICA satisfied the judgment and dismissed said appeal.

42. However, this January 12, 2016 Order and subsequent judgment thereon did not fully compensate PLAINTIFF for the harm caused to it by SCRIPSAMERICA's frivolous FEDERAL COURT ACTION. For example, PARTERS LLC, KIRKLAND and O'NEIL were not fully compensated for all of the attorneys' fees they incurred in connection with the FEDERAL COURT ACTION, and GLOBAL IV was not compensated at all for the attorney fees it incurred in connection with SCRIPSAMERICA's frivolous FEDERAL COURT ACTION. GLOBAL IV was a named defendant in the FEDERAL COURT ACTION, but was never served and never appeared in the FEDERAL COURT ACTION. Nonetheless, GLOBAL IV was forced to incur in excess of $100,000 in legal fees in connection with the FEDERAL COURT ACTION, given, among other

things, it was a named defendant that could have been served at any point during the litigation and could have been bound by any adverse rulings against the other PLAINTIFFS.

## THE STATE COURT ACTION CONTINUES

43. SCRIPSAMERICA's shenanigans continued in the STATE COURT ACTION.

44. After the ORDER DISMISSING FEDERAL ACTION, dismissing SCRIPSAMERICA's claims with prejudice, the Court in the STATE COURT ACTION issued an Order Enforcing Prior Order for Approval of Stipulation for Settlement of Claims, stating: "As of September 17, 2015, Defendant [ScripsAmerica, Inc.] is required to make Additional Issuances of 87,031,631 shares of its common stock to Plaintiff [Ironridge Global IV, Ltd.] under Prior Order [Stipulation for Settlement of Claims dated November 8, 2013]." The Court in the STATE COURT ACTION further ordered that SCRIPSAMERICA cannot issue common stock shares to any other individual or entity until the 87,031,631 shares of its common stock are issued to GLOBAL IV.

45. DEFENDANTS yet again violated the Court's orders not to issue shares to others until it issued shares to GLOBAL IV. Public filings by SCRIPSAMERICA shareholders show that they were issued shares of stock after entry of the orders that they not do so. DEFENDANTS appealed these court orders to the California Court of Appeal as well.

## SCRIPSAMERICA COMMON STOCK

46. The highest price of SCRIPSAMERICA's stock price from the date of the STIPULATION FOR SETTLEMENT to the date of filing of this action was $0.20 per share. SCRIPSAMERICA's stock price as of the date of the STATE COURT ORDER was $0.12 per share. SCRIPSAMERICA's stock price as of the date of the filing of the FEDERAL COURT ACTION was $0.10 per share. SCRIPSAMERICA's stock price as of the date of the ORDER DISMISSING

FEDERAL ACTION was $0.03 per share. During the relevant periods in connection with this matter, SCRIPSAMERICA's stock price had typical volatility from a high of $0.22 per share to a low of less than $0.02 per share. GLOBAL IV is entitled to damages with respect to the depreciation in stock value, incurred as a result of DEFENDANTS' filing and maintenance of the FEDERAL COURT ACTION, in an effort to delay and/or avoid issuing shares of its common stock to GLOBAL IV pursuant to the orders in the STATE COURT ACTION.

## CFA INVESTIGATION RESULTING FROM BASELESS FEDERAL COURT ACTION

47. As a direct result of DEFENDANTS' filing and maintenance of the baseless FEDERAL COURT ACTION, the CFA Institute commenced an investigation into O'NEIL, a named defendant in the FEDERAL COURT ACTION despite not being a party to the STATE COURT ACTION or the STIPULATION FOR SETTLEMENT. O'NEIL is a Certified Financial Analyst ("CFA") charterholder. A special investigator within the Professional Conduct Program of the CFA Institute commenced an investigation into O'NEIL, solely based on the meritless allegations set forth in the complaint filed by DEFENDANTS in the FEDERAL COURT ACTION.

48. An accusation of Rule 10b-5 violations against an investment professional is the most serious charge of wrongful conduct that can be levied in the securities industry. Not surprisingly, this baseless allegation by DEFENDANTS against O'NEIL triggered an investigation by the CFA Institute.

49. This baseless allegation also triggered additional, stringent reporting requirements O'NEIL and KIRKLAND will both have to abide by for life in connection with, among other things, future applications to the New York Stock Exchange, Nasdaq Stock Market, state bars, and various professional organizations. They will also be required to disclose that this baseless allegation of 10b-5 violations

1  that was levied against them, for life.  This will be a stain on their business

2  reputation for life, even though it is patently false.

3        50.    O'NEIL and KIRKLAND were damaged, among other ways, based on

4  the foregoing as follows.  O'NEIL and KIRKLAND have suffered, and continue to

5  suffer, damages, among other damages, such as attorney fees incurred, emotional

6  distress, mental suffering, stress, distress, worry, and damage to their reputation in

7  the business community, in connection with the fallout from DEFENDANTS' false

8  accusations and malicious prosecution.

## FIRST CAUSE OF ACTION

(Malicious Prosecution Against All Defendants)

11        51.    PLAINTIFFS incorporate herein by reference all the allegations

12  contained in paragraphs 1 through 51 of this Complaint.

13        52.    The FEDERAL COURT ACTION was commenced by

14  DEFENDANTS and was pursued to a legal termination favorable to PLAINTIFFS.

15  On August 11, 2015, the FEDERAL COURT ACTION against PLAINTIFF was

16  dismissed in its entirely, including dismissal with prejudice of a portion of the

17  declaratory relief claims and all of the securities fraud claims pursuant to the

18  ORDER DISMISSING FEDERAL ACTION.

19        53.    The FEDERAL COURT ACTION was brought by DEFENDANTS

20  without probable cause.  SCRIPSAMERICA knew its accusations against

21  PLAINTIFFS were untrue and contrary to the known facts.  LAWYER and LAW

22  FIRM had no good faith basis to believe the allegations were true, and failed to

23  conduct any reasonable factual investigation or legal research before filing suit

24  which would have shown the suit to be baseless.  DEFENDANTS continued to

25  prosecute the FEDERAL COURT ACTION and file amended complaints long after

26  it became clear there was no good faith factual or legal basis for the claims.

27        54.    The FEDERAL COURT ACTION was brought by DEFENDANTS

28  with actual malice.  DEFENDANTS were motivated by spite and ill will against

PLAINTIFFS, as demonstrated by their filings and statements to the courts in the FEDERAL COURT ACTION, by their naming PARTNERS LLC, as well as KIRKLAND and O'NEIL personally in the FEDERAL COURT ACTION even though they were not parties to the STIPULATION FOR SETTLEMENT with SCRIPSAMERICA or the STATE COURT ACTION. In addition, SCRIPTSAMERICA widely publicized the filing of the meritless FEDERAL COURT ACTION in an attempt to maximize the damage to the reputation of PLAINTIFFS caused by the filing of the suit, with the end goal of delaying or avoiding the issuance of the SCRIPSAMERICA stock to GLOBAL IV as required.

55. In an attempt to harass and intimidate PLAINTIFFS and further delay and avoid the issuance of its common shares to GLOBAL IV pursuant to the state court's enforcement order, DEFENDANTS asserted baseless, meritless and frivolous securities fraud allegations against PLAINTIFFS in the FEDERAL COURT ACTION, without probable cause, and with actual malice and ill will. DEFENDANTS filed the baseless FEDERAL COURT ACTION, without probable cause, and with actual knowledge of the falsity of the allegations therein. DEFENDANTS filed the baseless FEDERAL COURT ACTION, without probable cause, to harass and intimidate PLAINTIFFS and delay and avoid issuing shares of its common stock to GLOBAL IV pursuant to the STATE COURT ORDER.

56. After the filing of the FEDERAL COURT ACTION, DEFENDANTS maliciously continued to prosecute the lawsuit against PLAINTIFFS without probable cause, including the filing of two amended complaints after the federal court had already ruled their claims were without merit. The Court in the FEDERAL COURT ACTION stated that, among other things, "[d]espite having had three opportunities to plead a viable claim, two of which followed detailed orders noting numerous deficiencies, Scrips has still failed to plead any specific allegations that [Ironridge] did anything to manipulate the market." DEFENDANTS were never able to specifically allege such conduct as PLAINTIFFS never engaged in such

conduct. Despite this fact, DEFENDANTS asserted baseless allegations in the FEDERAL COURT ACTION, and continued to prosecute this FEDERAL COURT ACTION until the Court dismissed it with prejudice.

57. Specifically, the Court in the FEDERAL COURT ACTION, in dismissing the action, held as follows:

> (1) defendant's use of multiple brokerage firms was insufficient, alone, to state claim for market manipulation; (2) complaint failed to allege with particularity which of LLC's trades were manipulative and why, as required to state claim for market manipulation; (3) LLC had no duty to disclose to corporation the number of brokerage accounts it intended to use to trade in stock, and thus omission to disclose did not support claim for securities fraud; (4) there were no allegations that LLC intended, at the time it was made, to break its promise not to engage in market manipulation; (5) complaint failed to sufficiently allege reliance, as required for claim for securities fraud; (6) complaint failed to sufficiently allege strong inference of scienter; and (7) once securities fraud claims were dismissed, court would decline to exercise supplemental jurisdiction over state law claims.

58. As a result of DEFENDANTS' malicious prosecution of the FEDERAL COURT ACTION against PLAINTIFFS, PLAINTIFFS have suffered damages in the form of unreimbursed legal expenditures incurred in connection with the FEDERAL COURT ACTION in excess of the jurisdictional minimum of this Court. PLAINTIFFS have further suffered damages in the form of lost opportunity costs and presumed damage to their reputations in the business and investment community, as a result of DEFENDANTS' malicious prosecution. In addition, GLOBAL IV has suffered damages in the form of loss in value of the SCRIPSAMERICA common stock to which it was and is entitled to, lost profits and other economic damages in an amount to be determined at trial. Further, as a result of DEFENDANTS' malicious prosecution of the FEDERAL COURT ACTION against PLAINTIFFS, KIRKLAND and O'NEIL suffered damages in the form of emotional distress, mental suffering, stress, distress and worry.

59. Based on the foregoing malicious prosecutions, DEFENDANTS engaged in conduct with malice, oppression and fraud, justifying an award of exemplary and punitive damages in an amount to be fixed by the jury. Accordingly, PLAINTIFFS are entitled to punitive damages, pursuant to California Civil Code Section 3294, so as to punish DEFENDANTS and deter them from similar conduct in the future.

## PRAYER

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as follows:

    A. For general damages in excess of the jurisdictional minimum of the Court;

    B. For special damages in excess of the jurisdictional minimum of the Court;

    C. For exemplary and punitive damages appropriate to punish or set an example of defendants;

    D. For prejudgment interest in an amount to be proved at time of trial;

    E. For costs of suit and attorney fees incurred herein; and

    F. For such other and further relief as the court may deem just and proper.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY OF ALL CAUSES OF ACTION ALLEGED HEREIN.**

Dated: October 21, 2016    **MAKAREM & ASSOCIATES APLC**

By: ___/s/Matthew J. Negrin /s/_____
MATTHEW J. NEGRIN
Attorneys for Plaintiffs IRONRIDGE GLOBAL IV, LTD., IRONRIDGE GLOBAL PARTNERS, LLC, JOHN KIRKLAND, and BRENDAN O'NEIL